**J. W. DAVIS et al., Appellants,**

v.

**H. MOLSEN & CO., INC., Appellee.**

**No. 976.**

Court of Civil Appeals of Texas, Tyler.

Dec. 30, 1976.

Jack P. Driskill, McWhorter, Cobb & Johnson, Lubbock, for appellants.

Thomas A. Blakeley, Jr., Grady, Johnson, Smith & Blakeley, Dallas, for appellee.

MOORE, Justice.

This suit involves the construction of a written contract. Appellants, J. W. Davis, W. T. Settle, E. J. Pope, Jr., and Kathryn Raymond, instituted suit against appellee, H. Molsen & Co., Inc. (Molsen), to recover the market value of cotton sold and delivered to Molsen under protest, alleging that contracts executed by them did not cover cotton having a micronaire [1] reading of 3.6 and above. Appellants alleged that although they each executed identical written contracts [2] agreeing to sell their entire 1973

---

1. "Micronaire" is a term used in describing the measured strength of cotton fiber. The higher the micronaire, the stronger the fiber and the better the cotton.

2. Pertinent parts of the contracts are as follows:

"COTTON CROP CONTRACT—
1973–74 CROP YEAR

"The undersigned agreed to sell and deliver to TEXANA COTTON COMPANY or his agent (hereinafter referred to as PURCHASER) and the PURCHASER agreed to buy SELLER'S entire production of cotton which shall be pro-

cotton crop, the contracts did not extend to, or cover cotton having a micronaire reading above 3.5 or the price to be paid therefor. They alleged that no contract existed as to any of the cotton with a micronaire higher than 3.5, and prayed judgment for the difference between a market value of all cotton delivered having a micronaire reading above 3.5, and the 30 cents per pound which was accepted by them upon delivery under protest. Appellee Molsen answered with a general denial and by the way of an affirmative defense alleged that each of the appellants contracted to sell their entire 1973 cotton crop at certain specified prices up to 30 cents per pound without specifying that higher prices were to be paid for cotton having a micronaire above 3.5. Therefore, Molsen alleged that since the parties failed to stipulate that a higher price would be paid for cotton having a micronaire above 3.5, the contract must be interpreted to mean that the parties agreed that all cotton with a micronaire reading above 3.5 would bring the same price (30 cents per pound) as that agreed to be paid for 3.5 micronaire cotton. In the alternative, Molsen alleged that in the event the court found the contract to be ambiguous the agreement of the parties should be construed to mean that the parties mutually intended that all cotton above 3.5 would bring the same price as 3.5 micronaire cotton and that no premium price would be due and payable on any of the cotton having a micronaire above 3.5. Trial was before a jury. The trial court submitted two identical special issues on behalf of each of the appellants. Special

issues 1, 3, 5 and 7, together with the jury's verdict, may be summarized as follows: Do you find from a preponderance of the evidence that at the time the contract was signed, it was the mutual intent of the parties to contract only for cotton which had a micronaire of 3.5 or below? Answer: "It was not their intent." Special issues 2, 4, 6 and 8, together with the jury's verdict, may be summarized as follows: Do you find from a preponderance of the evidence that the parties to the contract failed to fix or agree upon a price for the cotton with a micronaire above 3.5? Answer: "They did not fail to agree." Judgment was entered on the verdict decreeing that the appellants take nothing. After their motion for new trial had been overruled, appellants perfected this appeal.

We affirm.

Appellants seek a reversal by twelve points of error. In replying to the points, appellee contends that points 1 through 3, point 5 and points 7 through 9 were waived by appellants because the rulings of the trial court of which they complain were not assigned as error in appellants' motion for a new trial. As we view the record, appellee's contention must be sustained.

In substance, points 1 through 3 complain of the court's refusing to enter judgment for appellants on the ground that Molsen waived its defense by failing to request and secure findings that because of trade usage appellants agreed to sell all cotton with a micronaire of 3.5 and above at the same price agreed to be paid for 3.5 cotton, and

duced, gathered and ginned from the following farms during the 1973–74 harvesting period. (here follows a description of the farm and number of acres) The contract price shall be figured on net weight against the following prices:

| GRADE | Micronaire ranges—all staples | | | | |
|---|---|---|---|---|---|
| | 3.5 | 3.3–3.4 | 3.0–3.2 | 2.7–2.9 | 2.6–2.4 |
| 21, (etc) | 30¢ | 29¢ | 28¢ | 26.50¢ | 17¢ |
| 22, (etc) | 28¢ | 27¢ | 25¢ | 21¢ | 16.50¢ |
| 23, (etc) | 23¢ | 22¢ | 20¢ | 18¢ | 15¢ |
| 24, (etc) | 17¢ | 17¢ | 16¢ | 15¢ | 14¢ |

* * * Minus 2.4 Micronaire will be at market price, also yellow stained.

    *     *     *     *     *     *

Delivery of all cotton shall be made to the PURCHASER promptly upon receipt by SELLER of government classing cards and the warehouse receipts, and this contract shall be considered fulfilled when the SELLER delivers all cotton produced and ginned on the above farm or farms in the 1973/74 season.

    *     *     *     *     *     *

Executed this the 10 day of April 1973."

by failing to request and secure findings that the parties mutually intended that all cotton with a micronaire above 3.5 was sold at the same price as 3.5 micronaire cotton. By their fifth point appellants contend that the contract is clear and unambiguous and shows that although the appellants agreed to sell their entire cotton crop, the parties failed to stipulate in the agreement the price to be paid for cotton above 3.5 micronaires; therefore, they argue that they are entitled to judgment for the reasonable market price for all cotton above 3.5 micronaires, as a matter of law. In the seventh point appellants assert that there is no evidence to support the jury's findings that the parties did not intend to contract only for cotton which had a micronaire of 3.5 or below, and in the eighth and ninth points, appellants urge that the trial court erred in failing to disregard the jury's findings and in failing and refusing to render judgment in their favor notwithstanding such findings.

While the record reveals that appellants filed a motion for judgment non obstante veredicto under Rule 301, Texas Rules of Civil Procedure, the record does not show that the motion was ever presented or acted on by the trial court. The transcript contains no order overruling the motion and, therefore, any complaint of the judgment set forth in the motion is waived. *Hardy v. C.P.I. Sales, Inc.*, 511 S.W.2d 89 (Tex.Civ.App.-Houston [1st Dist.] 1974, no writ); *Barnett v. Woodland*, 310 S.W.2d 644 (Tex.Civ.App.-Austin 1958, writ ref'd n. r. e.).

After a careful examination of appellants' motion for new trial, we fail to find any assignments of error relating to any of the matters complained of in points 1, 2, 3, 5, 7, 8 and 9.

The cases are legion holding that a ground of error not distinctly set forth in a motion for new trial, where such motion is required, is waived. See 3 Tex.Jur.2d, App. and Err. Civil Cases, Sec. 175 p. 571 and the cases cited therein; see Rules 320, 321 and 324, Tex.R.Civ.P. Points 1, 2, 3, 5, 7, 8 and 9 are therefore overruled.

Under the third point, appellants assert that the trial court erred in rendering judgment for appellee on the verdict because they contend that the jury's verdict on special issues 2, 4, 6 and 8 is against the great weight and preponderance of the evidence, and by the sixth point appellants make the same contention with regard to the jury's verdict on special issues 1, 3, 5 and 7.

In making the contracts in question appellants negotiated with U. O. Hobgood, a commission buyer for Texana Cotton Company. Texana, in turn, was acting as the agent of Molsen. The evidence shows that Molsen is a world wide cotton merchant, selling to cotton mills in this country and abroad. Heinz Molsen testified that his purpose in making the contracts was to fulfill contracts the company had made for 3.0 micronaire cotton for export. The evidence shows that most lower mike cotton is exported and the price is usually established at 3.0 micronaires. Cotton with a "mike" above 3.0 may be shipped, but no premium is received for that above 3.5.

The micronaire content of cotton is controlled by the weather. Normally, very little cotton was produced by the appellants containing a micronaire reading above 3.5. The normal mike range for cotton produced by appellant Settle is 3.0 to 3.5; by Davis it is 3.0; by Pope the normal mike below 3.5; and by Raymond 3.0 to 3.2. There is no way to know in advance what the micronaire will be. Each appellant testified that at the time they signed the contract they knew it was possible that some of their cotton would be above 3.5. The 1973-74 crop year was unusual in that on the average approximately 95% of the cotton produced by the appellants turned out to be above 3.5. It is uncontroverted that under normal circumstances all cotton which is within the premium micronaire range of 3.5 to 4.9 brings the same price as cotton exactly 3.5 when sold on the open market in the area in question. Cotton with a mike above 4.9 brings a lower price on the open market because it becomes coarse and less valuable.

Hobgood testified that he explained to each of the appellants before the contracts

were signed that the price for all cotton with 3.5 micronaires and up would be 30 cents per pound. He testified that he told each appellant that there would be no discounts for cotton 5.0 and above and this was one of the selling features of the contract. He testified that he explained to each appellant that cotton below 2.4 would be at market price but he did not tell them that cotton above 3.5 was to be at market price. He testified that neither of appellants indicated to him that 3.5 cotton was not covered by the contract.

Each of the appellants testified that when they discussed the contract with Hobgood nothing was said by them or Hobgood with regard to cotton above 3.5. They each testified that at the time they signed the contract they did not notice that cotton above 3.5 was not mentioned in the contract, and they did not discover it until it was called to their attention in the fall of 1973. Mr. Davis, when asked on cross examination whether it would be fair to say that in signing the contract he intended to sell his 3.5 or better cotton for 30 cents, answered: "Yes, sir." Appellant Pope testified that he knew cotton above 3.5 normally brings the same as exactly 3.5 cotton. He testified that when he signed the contract he had no intention to hold back premium mike for himself and that he assumed the contract covered premium mike cotton. He further testified that when he signed the contract he assumed that his premium mike cotton would be delivered at the top contract price of 30 cents per pound. Appellant Settle testified he did not notice that the contract did not mention cotton above 3.5, but at the time he signed the contract he did not "imagine" he intended to hold back any premium mike cotton for himself. Settle, as well as all other appellants, agreed that 30 cents per pound was the full, fair price for 3.5–4.9 cotton at the time of the execution of the contracts in early 1973. Appellant Raymond testified that Hobgood told her at the time she signed the contract that the minus 2.4 mike cotton would bring market price, but he did not promise her that the cotton above 3.5 would bring market price.

Davis, Settle, Pope, Raymond, Hobgood and Molsen all testified positively and unequivocally that there was never any discussion or intent to make an open price contract for cotton above 3.5 micronaires.

In addition to the foregoing testimony the jury had before it the four contracts in which the parties stipulated at two separate places that plaintiffs agreed to sell their entire cotton crop and stipulated that cotton below 2.4 would bring market value, but made no such stipulation for that above 3.5.

■ After considering the entire record and after weighing and balancing all of the evidence, both that in support of the verdict and that contrary to the verdict, we do not believe we would be justified in concluding that the verdict and the judgment based thereon is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Appellants' fourth and sixth points are accordingly overruled.

Appellants complain in their tenth point of the trial court's action in sustaining appellee's objection and refusing to admit into evidence certain interrogatories propounded to five other cotton farmers who signed identical contracts wherein they testified that Hobgood did not explain to them that they would be paid only 30 cents per pound for all cotton above 3.5 micronaires. Appellants argue that this testimony was admissible to impeach Hobgood's testimony where he explained to appellants that they were to receive no more than 30 cents per pound for all cotton above 3.5.

■ While appellants complained of the exclusion of the foregoing testimony in their motion for new trial, they do not assert the testimony was admissible for impeachment purposes. They alleged only that it was admissible to show that Molsen intended to purchase only cotton with a mike of 3.5 and below. Nowhere in their motion for new trial do the appellants contend that the court erred in refusing to admit the evidence for impeachment pur-

poses. Thus, this particular complaint is made for the first time on this appeal. Rule 374, Texas Rules of Civil Procedure, provides that a ground of error not distinctly set forth in the motion for new trial "shall be considered as waived." See Rule 320, Tex.R.Civ.P.; *Buchanan v. Central Freight Lines, Inc.*, 462 S.W.2d 391, 398 (Tex.Civ.App.-Dallas 1970, writ ref'd n. r. e.). Accordingly, appellants' tenth point is overruled.

Under the eleventh point appellants urge that the trial court erred in excluding certain testimony of the witness, Heinz Molsen. Appellants contend that such testimony should have been admitted to show that the contract covered the "entire" production only within the micronaire ranges specified on the face of the contract. Here again we fail to find any assignment of error in appellants' motion for new trial complaining of the exclusion of this testimony. The point is therefore overruled for the same reasons set forth under the preceding point.

By their twelfth and final point appellants contend that the court erred in instructing the jury as follows:

"You are instructed that in construing a contract, it is fundamental that the actual intent of the parties will prevail over dry words, inapt terms and careless recitations contained in the agreement unless, of course, the intent is directly contrary to the plain meaning of the language used in the instrument. In other words, a contract must be read in accordance with the intent and understanding of the parties, without regard to omissions, if any."

While appellants objected to the giving of the instruction on several grounds, their complaint in the motion for new trial is limited to the action of the court in overruling their objection to that portion of the instruction advising the jury that "a contract must be read in accordance with the intent and understanding of the parties, without regard to omissions, if any." Appellants argue that there was no evidence that any of the terms of the contract was omitted by mistake. They contend that the contract shows on its face that the parties did not intend to contract cotton having a micronaire reading of 3.5 and above. Consequently appellants say the jury was misled in that they were instructed that if they believed cotton 3.6 and above was omitted by mistake, they could supply that which was omitted and answer the issues accordingly.

■ Appellants took the position throughout the trial that the agreement to sell their "entire" crop meant that they agreed to sell their entire crop within the micronaire ranges specified on the face of the contract and that they did not agree to sell any cotton with a micronaire reading above 3.5. The trial court correctly determined that the contract was ambiguous and properly admitted parol evidence bearing on the intent of the contracting parties. See *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145 (Tex.Civ.App.-Amarillo 1976, writ ref'd n. r. e.) involving a similar contract. After hearing the witnesses and considering the contracts in question, the jury refused to find that the parties intended to contract only for cotton which had a micronaire of 3.5 and below and refused to find that the parties failed to agree on a price for the cotton with a micronaire above 3.5.

■ The instruction complained of constitutes a correct statement of the law. It follows almost verbatim the language used in 13 Tex.Jur.2d Contracts, sec. 131. The instruction is designed to be used by the court in construing an unambiguous contract. While such an instruction was probably unnecessary, we fail to see how the instruction resulted in harm to appellants especially since it instructed the jury that the paramount issue was the intent of the parties. After a review of the record as a whole, there is no reason to believe that the jury would have answered the issues differently if the instruction had not been included in the charge. Thus, we cannot say that the error, if any, was calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Tex.R.Civ.P.

The judgment is affirmed.