CITY OF GALVESTON, Appellant,

v.

GALVESTON MUNICIPAL POLICE ASSOCIATION, Steve Wilson, and Donald Grove, Appellees.

No. 14–00–01082–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 23, 2001.

---

Betty S. Springer, Julie M. Hipps Vasquez, Fort Worth, for appellants.

Richard L. Aman, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and WITTIG.

## OPINION

WITTIG, Justice.

This is an appeal from the trial court's arbitration order. There was an arbitration requirement in a collective bargaining agreement ("CBA") between the Galveston Municipal Police Association ("GMPA") and the City of Galveston. Appellee Wilson, a current member of the Galveston Police Department ("GPD"), and appellee Grove, a retired member of GPD, grieved the City of Galveston ("the City") for changes it made in health insurance benefits. After efforts to resolve the grievances failed, appellees invoked the arbitration provision in the CBA, which the City refused. We determine whether the trial court properly ordered the parties to arbitration. We affirm as to Wilson, and reverse and render as to Grove.

## Background

This case arises out of two grievances, one filed by active-duty GPD officer Steve Wilson and one by retired GPD officer Donald Grove. The grievances were filed pursuant to a CBA between GMPA and the City. Wilson grieved that the City violated the CBA when it increased the co-pay amounts on mental health visits and reduced the permitted number of annual visits. Grove complained that the City violated the CBA by increasing the health insurance premiums for dependents of retirees.

The grievance process under the CBA consists of four steps. Grove and Wilson went through the first three steps without resolution. On their behalf, GMPA then invoked the fourth step, arbitration. The City refused to submit to arbitration and filed a declaratory judgment action requesting that the trial court find the grievances were non-arbitrable. GMPA counter-claimed, requesting that the trial court order the City to arbitration. After an evidentiary hearing, the court found for GMPA and granted the requested arbitration order. The City now appeals that order.[1]

## Standard of Review

Where the trial court's decision concerning an arbitration order involves both factual determinations and legal conclusions, we review under an abuse of discretion standard. *See In re FirstMerit Bank, N.A.*, 44 Tex. Sup.Ct. J. 900, 52 S.W.3d 749, 752 (2001) (holding that the trial court abused its discretion in failing to order parties to arbitration); *Ysleta I.S.D. v. Godinez*, 998 S.W.2d 700, 702 (Tex.App.—El Paso 1999, no pet.). Purely legal conclusions are reviewed de novo. *Id.* We review factual questions under a no-evidence standard. *Id.*

## Discussion

### GMPA's Standing to Grieve on Behalf of Grove

We first address the City's argument that GMPA could not compel arbitration on Grove's behalf because Grove, as a retiree, was not a member of the bargaining unit. We disagree. First, we note that Article 11 of the collective bargaining agreement implicitly recognizes retirees as part of the bargaining unit by defining

---

1. The City claims the trial court ordered the arbitrator to determine the issue of arbitrability. We fail to see how the City perceives this

as the court's ruling. The order clearly sends the entire case, not the issue of arbitrability, to arbitration. We treat the order as such.

"retiree," in part, as "any member of the collective bargaining unit. . . ." Additionally, a union can force an employer to arbitrate disputes concerning retiree benefits. *Local 589, International Ladies' Garment Workers' Union v. Kellwood Co.,* 592 F.2d 1008, 1011–12 (8th Cir.1979); *United Steelworkers v. Canron, Inc.,* 580 F.2d 77, 80–81 (3rd Cir.1978) (upholding union's standing to represent retirees in seeking arbitration under CBA). The relevant issue is whether the City has contractually committed itself in the CBA to conferring benefits in question to a person covered under that agreement. *See Meza v. General Battery Corp.,* 908 F.2d 1262, 1269–70 (5th Cir.1990) (discussing *Canron* with approval); *see also International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) v. Yard-Man, Inc.,* 716 F.2d 1476, 1486 (6th Cir.1983) (the union, as signatory to the contract, may bring action for retirees and has direct interest in maintaining integrity of retiree benefits created by CBA).

Here, GMPA negotiated on behalf of retirees and the City voluntarily agreed in the CBA to confer upon them insurance benefits. The CBA clearly states that GMPA may bring a grievance to arbitration.[2] Thus, we hold that Grove's retiree status did not preclude GMPA from invoking the arbitration process on his behalf.

### Were the Grievances Excluded Under the CBA?

We next address the City's contention that Grove's and Wilson's grievances were not arbitrable because they were excluded by the CBA.

Article 7 of the CBA, captioned "Grievance and Arbitration," states, in pertinent part:

A "grievance" is defined as a claim that an express provision of the [CBA] has been violated. . . . Only grievances involving the interpretation, application or alleged violation of a specific clause in this Agreement may be submitted to the grievance procedure. . . .

The grievance procedure then provides for three steps of dispute resolution, including submission of the dispute to the Chief of Police and mediation. Article 7 continues: "If the grievance remains unresolved after Step 3, the GMPA shall decide whether to pursue the case to binding arbitration. . . ."[3]

Article 7 concludes with matters that are excluded from the grievance procedure, and are non-arbitrable. It states, in relevant part:

Notwithstanding anything in this Agreement to the contrary, the following matters are not subject to the grievance procedure of this agreement:

. . . .

Any matter that is not covered by the [CBA];

Any matter covered by the City Charter of Galveston, City Ordinances of Galveston, and the statutes and constitutional provisions of the State of Texas.

Article IX, Section 4 of the Galveston City Charter states, in relevant part:

The [City] Council shall have the power, at its discretion and subject to such regulations and limitations as it may deem proper, to create, operate, and contract plans of insurance which will provide

---

**2.** Article 7 of the CBA provides: "If the grievance remains unresolved . . . the GMPA shall decide whether to pursue the case to binding arbitration."

**3.** We note the grievance provision of Article 7 of the CBA subsumes arbitration; thus, if a matter is grievable, it is necessarily arbitrable.

health, life, accident, medical and hospital benefits, or any of these, for all or any group of City employees, and to pay or contribute toward the cost of such plan or insurance out of funds available for that purpose.

The City argues that because the grievances "related to" the "creation, operation, and contracting of health insurance plans, benefits, and contributions towards insurance costs," they were "specifically" excluded from the grievance and arbitration provisions of the CBA.[4]

The City does not contest the existence of an arbitration agreement. Rather, it argues that the CBA's exclusion to the grievance process applies here. We therefore must determine whether, under the applicable standards, the exclusion in the CBA bars the grievances from arbitration.

We begin with the recognition that federal and state law strongly favor arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex.1995); *see generally*, Tex. Loc. Gov't.Code Ann. §§ 174.001– 174.253. Indeed, a presumption exists in favor of agreements to arbitrate. *Prudential Sec.*, 909 S.W.2d at 898–99. Courts must resolve any doubts about an agreement to arbitrate in favor of arbitration. *See FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (resolving any doubts about arbitration clause's factual scope in favor of coverage). Once the existence of an arbitration agreement has been shown, the party resisting

arbitration bears the burden of proving that the dispute at issue falls outside of the arbitration agreement. *Id.*; *Prudential Sec.*, 909 S.W.2d at 900. The policy favoring enforcement of arbitration provisions is so compelling that a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible to an interpretation that would cover the dispute at issue. *AT & T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 656, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Prudential Sec.*, 909 S.W.2d at 899.

In one of the seminal cases on arbitrability of modern CBAs, *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court examined a situation similar to ours in some material respects. There, the CBA contained a broad provision that made arbitrable disputes over the "meaning and application" of the provisions of the CBA.[5] The CBA also contained a seemingly broad exclusion stating that "matters which are strictly a function of management shall not be subject to arbitration...." *Id.* at 576, 80 S.Ct. 1347. The company laid off numerous employees and contracted work to outside personnel. The union sought to arbitrate, alleging the company had violated the CBA by contracting out work, thus "inducing a partial lock-out." *Id.* at 575–76, 80 S.Ct. 1347. The company responded that the grievance was not arbitrable because the determination of whether to lay off employees or contract out work was "strictly a function of management." The Court disagreed.

---

**4.** The City also argues that Grove's grievance is covered by a Texas statute. We will address this issue in more detail below.

**5.** In our case, we have a similarly broad arbitration clause in that it implicates "the interpretation, application or alleged violation of a specific clause" of the CBA. *See also AT & T*

*Tech., Inc.*, 475 U.S. at 650, 106 S.Ct. 1415 (finding presumption of arbitrability particularly applicable under clause providing for arbitration of "any differences arising with respect to the interpretation of this contractor the performance of any obligation hereunder.").

It recognized that the exclusion provision could be read very broadly; however, for purposes of determining arbitrability, the Court narrowly interpreted the provision as referring only to "that over which the contract gives management complete control and unfettered discretion." *Id.* at 584, 80 S.Ct. 1347.[6] The Court found that contracting out work did not fall into this category, observing that:

> [a] specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration. In such a case a grievance based solely on contracting out would not be arbitrable. Here, however, there is no such provision. Nor is there any showing that the parties designed the phrase "strictly a function of management" to encompass any and all forms of contracting out. In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.

*Id.* at 584–85, 80 S.Ct. 1347.

Clearly, then, the teaching of *Warrior & Gulf* is that the exclusion clause must be very precise and specific as to which types of complaints are excluded from the grievance procedure. With that in mind, we next look to the exclusion provision under the CBA, which removes from the grievance process "[a]ny matter covered by the City Charter of Galveston, City Ordinances of Galveston, and the statutes and constitutional provisions of the State of Texas." We first note that this clause necessarily requires that we take the step of looking outside the CBA to determine whether a matter is excluded from the grievance process. Further, unlike other exclusion clauses our research produced, this provision does not expressly refer to any precise subjects, but essentially incorporates by reference the entire ever-changing body of Texas statutory and constitutional law, as well as most of the laws of the City of Galveston. This is not a specific exclusion. Nor is it clear from the context what it means for a given grievance to be "covered by" any of these laws. Does the law merely have to refer or "relate to" the matter, as the City suggests? Must the law exhaustively regulate the matter? The term "covered by," without further clarification, is simply too vague to answer these questions. Specifying particular matters to be excluded from the grievance process is one thing; a wholesale incorporation of every statute and constitutional provision in the State of Texas, along with most of the laws of the City of Galveston, and stating everything "covered by" them is excluded is quite another.

The City conceded in oral argument that it would be difficult to conceive of anything which would not be covered by one or more of these laws. As such, anytime an officer filed a grievance, the City could escape the process by invoking any of potentially tens of thousands of provisions which might cover the dispute. Thus, not only would little or nothing be arbitrable under the CBA but, by extension, disputes

---

**6.** The Court noted:

"Strictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception.

*Warrior & Gulf,* 363 U.S. at 584, 80 S.Ct. 1347.

over the CBA would not even be grievable at the lowest levels of the dispute resolution process. If the City's view were to prevail, the provision affording officers an efficient avenue to have their complaints heard would be rendered hollow and the strong policy of allowing labor disputes to be arbitrated would be frustrated.[7]

In short, the exclusion provision is so prodigiously vague and ambiguous, and its breadth so potentially wide, it cannot be construed as an "express provision excluding a *particular* grievance from arbitration." *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. 1347 (emphasis added); *see also International Ass'n of Machinists & Aerospace Workers v. General Electric Co.*, 406 F.2d 1046, 1048 (2d Cir.1969) (language excluding certain labor disputes from arbitration must be clear and unambiguous or unmistakably clear). We therefore hold the exclusion provision does not meet the specificity required to exclude the disputes at issue in this case from the grievance/arbitration process. *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. 1347.[8]

 This is consistent with the fundamental rule of contract interpretation that courts are to give effect to all provisions of a contract, whether a contract is comprised of one, or more than one, document. *See, e.g., Guadalupe–Blanco River Auth. v. Tuttle*, 171 S.W.2d 520, 523 (Tex.Civ. App.—San Antonio 1943), writ ref'd w.o.m., 141 Tex. 523, 174 S.W.2d 589 (1943) (construing two documents so as to give effect to each); *Unocal Corp. v. Dickinson Resources, Inc.*, 889 S.W.2d 604, 609 (Tex. App.—Houston [14th Dist.] 1994), writ denied per curiam, 907 S.W.2d 453 (Tex.1995) (stating contract interpretation requires court to examine and consider entire writing to harmonize and give effect to all provisions of contract so that none are rendered meaningless). In giving meaning to both the CBA and the City Charter exception, we hold that the CBA controls to the exclusion of the City Charter wherever the CBA specifically defines the rights or obligations of the City and persons covered by the CBA, respectively. Accordingly, because the CBA specifically addresses the rates that may be charged for insurance to persons covered under the CBA, it controls over the vague "covered by the City Charter" exception, whereby the City has "discretion and subject to such regulations and limitations as it may

---

7. Counsel attributed the broad language to poor bargaining by the union. That could be so, but the legal effect is to create an exclusion provision that is perhaps all but impossible to enforce under our specificity requirements.

8. The City's basic argument is that, everything in the CBA is subject to the Article 7 grievance procedures unless covered by an exception. The City contends, however, that the "covered by the City Charter" exception precludes arbitration in this case-as well as every other case imaginable—because the City Charter grants the City broad powers to accomplish possibly all of the items covered by the CBA, including the matters at issue here. Accordingly, the City Charter exception swallows the rule—the grievance process—thereby rendering the meaning of Article 7 uncertain. "No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed." *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979) (citing *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 558 (1950)). The "covered by the City Charter" exception does not purport to preclude arbitration only, but the grievance procedure altogether. Arbitration is but the final step in the grievance process. Having completed the first three steps in the process, the City's own conduct, *i.e.,* the interpretation it has placed on the contract by its subsequent conduct, belies the argument it now makes on appeal.

deem proper, to create, operate, and contract plans of insurance which will provide health, life, accident, medical and hospital benefits, or any of these, for all or any group of City employees, and to pay or contribute toward the cost of such plan or insurance out of funds available for that purpose." [9]

■ The City presents an additional, independent reason why Grove's complaint is not arbitrable. It argues that, upon his retirement, Grove signed a form entitled "Statement of Selection of a Health Benefit Program by a Retiring Employee Governed by the Collective Bargaining Agreement." In this document, Grove acknowledged "I have been informed of all the Health Benefit Programs available for me to maintain for myself and/or any eligible dependent I may wish to include upon retirement. After considering all these programs, I hereby select to carry the following Health Benefit Program.... *(Check one)"*. (Italics in original.) The form then identified three different programs: (1) the program set out in the CBA; (2) the program "as set out in Chapter 174 as added to Subtitle C, Title 5, of the State of Texas' Local Government Code ...."; or (3) a COBRA program. Grove selected the second option, erroneously designated as a health benefit program as set out in *Chapter 174* of the Local Government Code.[10]

■ By selecting option two, Grove necessarily declined the CBA option. By declining to participate in the CBA health program, Grove cannot now take advantage of the grievance procedure contained in the CBA. Grove contends, however, that "the language of the form is contradictory on its face." Although we agree with this premise, we disagree with Grove's conclusion. Although it is true that Chapter 174 was later renumbered and codified as Chapter 175, that does not inexorably lead to the conclusion that Grove's choice was ambiguous to the point of rendering his choice unintelligible, as the trial court seemed to believe in stating, "I could certainly see how no one could know what this meant." We believe the trial court erred because "[o]bviously, this typographical mistake *must* yield to the well-established doctrine that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, *words, names, and phrases obviously intended may be supplied.*" *Ussery Invs. v. Canon & Carpenter, Inc.,* 663 S.W.2d 591, 593 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd) (emphasis added) (citing *Eldridge v. Poirier,* 50 S.W.2d 888 (Tex.Civ.App.—Dallas 1932, writ ref'd)); [11]

---

9. Under the City's interpretation, presumably it could choose not to provide insurance to city employees covered by the CBA. Such an interpretation, however, would render the Article 11 of the CBA meaningless.

10. Chapter 174 was renumbered in 1995 to Chapter 175. Tex. Loc. Gov't.Code Ann. § 175.001, *et seq.* (Vernon 1999). Chapter 175 sets forth verbatim the provisions applicable under the former Chapter 174. *Compare* Tex. Loc. Gov't.Code Ann. §§ 174.001–.007, *et seq.* (Vernon 1995) *with* Tex. Loc Gov't.Code Ann. §§ 175.001–.007, *et seq.* (Vernon 1999).

11. *Ussery* presented a similar issue. There, the appellant argued that certain restrictive covenants were not in effect because the document plainly called for their expiration on January 1, 1955. *Id.* at 593. In holding this was an obvious typographical error, the court noted that, under appellant's argument, the covenants would have expired 17 years before they were filed. *Id.* Likewise, given that the Legislature renumbered 174 to 175 only a short time before Grove's election, it is nonsense to conclude Grove's election can now somehow be shoe-horned into an election for the CBA.

*McMullan v. Friend,* 642 S.W.2d 15, 19 (Tex.App.—El Paso 1982, no writ); *Davis v. H. Molsen, Inc.,* 545 S.W.2d 889, 894 (Tex.Civ.App.—Tyler 1976, no writ).

Accordingly, we conclude that, by selecting the second option—whether it was Chapter 174 or Chapter 175—it certainly was not the CBA option. Consequently, Grove may not take advantage of the grievance procedure contained in the CBA-the very coverage he rejected. Moreover, given that the Legislature's renumbering of Chapter 174 occurred just a little more than a year before Grove's election, we believe that the trial court should have found that the parties' intent, as reflected by the selection of an apparently inapplicable chapter of the Local Government Code, was that Grove wanted to be covered under Chapter 175.

## *"Excluded" Evidence*

■ Finally, the City complains the trial court erred in not allowing it to put on additional evidence and testimony regarding the arbitrability of Grove's and Wilson's grievances. Because of our disposition as to Grove's eligibility for arbitration under the CBA, we address the City's complaint only insofar as it concerns Wilson. The City claims it made "offers of proof" to the trial court but eschews any citation to the record. Our review of the record does not show the City made any offers of proof, nor did it ask the court to allow it to present additional evidence or witnesses. No rulings were made to that effect. And finally, the record shows that every exhibit the City offered was admitted into evidence by the court. Appellant has thus presented nothing for us to review under this issue and waived error, if any. *See* Tex.R.App. P. 33.1; 38.1(h).

## Conclusion

We affirm the judgment of the trial court as to Wilson. We find the trial court erred in ordering the City to arbitrate the grievance filed by Grove and in denying the City's petition for declaratory judgment action as to the arbitrability of Grove's grievance. We reverse those portions of the judgment and render judgment that the grievance filed by Grove is not arbitrable.