COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| ANITA SANCHEZ, Individually and as Independent Executor of the Estate of LEOPOLDO GILBERT SANCHEZ, Deceased, | § | No. 08-20-00027-CV |
| | § | Appeal from the |
| | § | 327th District Court |
| Appellant, | | |
| | § | of El Paso County, Texas |
| v. | | |
| | § | (TC#2016DCV1112) |
| HECTOR BARRAGAN, SR., | | |
| | | |
| Appellee. | § | |

## **O P I N I O N**

Appellant Anita Sanchez appeals the trial court's summary judgment against her on Appellee Hector Barragan's action for declaratory judgment. Appellant's late husband, Leopoldo Sanchez, entered into an agreement to sell a parcel of property and other personal property to Appellee. After Appellee paid the agreed-upon price in full, Mr. Sanchez refused to tender the deed for the property to Appellee. Mr. Sanchez passed away during the pendency of litigation between the parties over ownership of the property in question, and his wife, Appellant, entered the suit on behalf of Mr. Sanchez's estate, and in her individual capacity, claiming an ownership interest in the property. The trial court rendered summary judgment in favor of Appellee on his action for declaratory judgment, and declared, among other things, that Appellee owned 100

percent of title on the subject property in fee simple absolute, as a result of his having tendered full performance under his agreement with Mr. Sanchez.

We affirm.

**BACKGROUND**

Summary judgment evidence from both parties provides the background to this case. The summary judgment standard obligates us to consider the evidence in the light most favorable to Appellant, the non-movant. *See Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

### *The Property and the Agreement*

Appellee met Mr. Sanchez in 2006. At the time, Mr. Sanchez told Appellee he was unmarried. In 2009, Appellee and Mr. Sanchez entered into an agreement for Appellee to purchase the property located at 1223 Tio Dink in El Paso, Texas (hereafter, the Agreement). Mr. Sanchez owned Lot 12, Block 1, Corrales Estates, commonly known as 1223 Tio Dink Circle, since 1997 when he purchased it. The Agreement also included purchase of a Silver Creek mobile home, a storage shed, and a Rambler. The contract price for all four—the real property, the mobile home, the storage shed, and the Rambler (collectively, the Property)—was $52,000. The following day, Appellee made a down payment of $13,000 to Mr. Sanchez. He continued paying thereafter at a rate of $600 per month.

In September of 2014, Appellee learned Mr. Sanchez got married in 1998. Appellee was particularly surprised because, at Mr. Sanchez's insistence, the Agreement contained a provision allowing Mr. Sanchez's girlfriend, Maria Rocio Cook, to live at 1223 Tio Dink.

Appellee made his final payment to Mr. Sanchez on November 14, 2014. The check

2

contained the notation, "Final Payment 1223 Tio Dink." Mr. Sanchez accepted, endorsed, and cashed the final check, and, according to Appellee, all previous checks before it. Appellee paid Mr. Sanchez the total sum of $52,000. After making the final payment, Appellee asked Mr. Sanchez for a warranty deed and bill of sale for the Property. Mr. Sanchez refused, citing pressure put on him by Appellant to withhold the documents from Appellee.

### Appellee's Lawsuit and Appellant's Answer

Appellee filed suit against Mr. Sanchez, alleging causes of action for breach of Section 5.077 and 5.079 of the Texas Property Code, common law fraud and misrepresentation, statutory fraud, and breach of contract. In addition to damages, Appellee alternatively sought specific performance under the Agreement.

Shortly after Appellee filed his original petition, Appellant made an entry of appearance as a "third party respondent" to Appellee's lawsuit. She then filed an entry of appearance claiming she represented Mr. Sanchez pursuant to a power of attorney. Subsequently, she filed an answer as a third-party defendant in the case. A short time later, Mr. Sanchez filed his answer.

In their answers, Appellant and Mr. Sanchez denied liability. They also alleged facts implying Appellee coerced or otherwise fraudulently induced Mr. Sanchez into signing the Agreement, due to the fact Mr. Sanchez was ill with cancer. They alleged Appellee knew Mr. Sanchez was married when he entered into the Agreement and falsely represented to Mr. Sanchez that he could convey the property to Appellee with a clear title. They further alleged any agreement to sell the property at 1223 Tio Dink was not in writing because the Agreement listed the property for sale as 1223 "Tio Dick."

Approximately two and a half years after Appellant filed her original answer, she amended

3

to answer on behalf of Mr. Sanchez's estate following his death. Her amended answer is otherwise substantially the same as her original answer. However, she amended a second time in early 2019, this time alleging a counter claim against Appellee for unlawful conversion of rental income on the Property.

In September of 2019, Appellee supplemented his petition to include Mr. Sanchez's estate and Appellant, individually and as the administrator of Mr. Sanchez's estate, as defendants in the case. In the supplemental petition, Appellee alleged that, despite filing a lis pendens on the Property at the inception of the lawsuit, Appellant attempted to convey the property to herself by Special Executor's Warranty Deed. He also asserted his action for declaratory judgment, seeking a declaration of his rights regarding the Property, and nullifying the purported conveyance of the Property made by Appellant.

### Appellee's Motion for Summary Judgment and Appellant's Response

After filing his supplemental petition, Appellee moved for summary judgment on his declaratory judgment action. He alleged Mr. Sanchez purchased the Property as a single man, before his marriage to Appellant, and thus the Property was Mr. Sanchez's separate property to which Appellant possessed no rights. He described his agreement with Mr. Sanchez to purchase the Property, the terms of the Agreement, and payments made to that end. He explained his discovery of Mr. Sanchez's marriage to Appellant, her resistance to finalizing conveyance of the Property to Appellee, and her attempt to convey the Property as the administrator of Mr. Sanchez's estate to herself. The motion sought a declaration that Appellee paid Mr. Sanchez in full according to the terms of the Agreement and Appellee is thus the sole owner in fee simple of the Property. Appellee also sought to void the purported conveyance by Appellant of the Property to herself.

4

In support of his motion, Appellee attached the following summary judgment evidence:

- The buyer's statement and special warranty deed for Mr. Sanchez's 1997 purchase of the property at 1223 Tio Dink Circle, El Paso, Texas 79907; The receipt for purchase of the mobile home composing a portion of the Property at issue;

- The certificate of marriage between Mr. Sanchez and Appellant;

- A receipt and handwritten acknowledgment from Mr. Sanchez for the $13,000 down payment on the Property;

- The Agreement;

- Affidavits from two witnesses who attested to the Agreement's signing by Appellee and Mr. Sanchez;

- A handwritten note purportedly made by Mr. Sanchez indicating the amount paid through May of 2014 on the Property and the remaining balance due;

- Check copies and stubs of the final six payments Appellee made to Mr. Sanchez for purchase of the Property;

- Appellee's affidavit in support of his motion; and

- An affidavit from Carlos Muniz, who worked as Appellee's assistant during the relevant time frame and witnessed incidents relevant to the parties' relationship.

In response to Appellee's motion, Appellant asserted several grounds for why the trial court should deny Appellee's motion. First, she alleged some of the check stubs and check copies provided by Appellee as evidence of payments made to Mr. Sanchez for the Property were not labeled as being mortgage payments, and thus a fact issue existed regarding whether they were applied as mortgage payments. In support, Appellant provides three check stubs listing "Teaching Materials" as the description of the checks, each for $600.

Next, Appellant claimed the Agreement was for purchase of property at "Tio Dick," rather than Tio Dink. Appellant also claims the Agreement lacks a sufficient legal description of the Property, and thus a fact issue exists regarding the parties' intent to enter into an agreement

5

regarding the property at Tio Dink, rather than "Tio Dick."

Finally, Appellant urges the signature on the Agreement purporting to be that of Mr. Sanchez is not identical to the signatures on other documents offered by Appellee as summary judgment evidence. In support, she provided a copy of Mr. Sanchez's driver's license, which bears his signature.

The trial court granted Appellee's motion and entered declaratory judgment for Appellee, as follows:

- The Agreement "was a binding and enforceable contract covering the [Property], which were the separate property of [Mr. Sanchez]; and that [Appellee] paid [Mr. Sanchez] in full the contract price of $52,000.00[.]"

- Appellee "is the sole and rightful, legal and equitable owner of 100% of the fee simple title to the real estate located at **1223 Tio Dink, El Paso, Texas 79907** and legally described as: **Lot 12, Block 1, CORRALES ESTATES, an Addition to the City of El Paso, El Paso County, Texas, according to the map and plat thereof filed for record in the Real Property Records of El Paso County, Texas.**"

- Appellee is the "sole and rightful, legal and equitable owner of 100% of the title" to the Silver Creek mobile home, the storage shed, and the Rambler.

- The Special Executor's Warranty Deed for the Property executed by Appellant in 2019 is "**null and void and of no legal effect and … is removed from the chain of title**[.]"

This appeal followed.

**DISCUSSION**

Appellant lists three issues on appeal: (1) whether the trial court erred when it pronounced the executory contract at issue covered the property on Tio Dink when the executory contract language stated it was for property on "Tio Dick;" (2) whether the trial court erred when it pronounced Appellee made payment in full to Mr. Sanchez for the covered property; (3) whether

6

the trial court erred when it held the signatures on the executory contract belonged to Mr. Sanchez.[1]

The first and third issues challenge the existence and/or validity of the Agreement between the parties. The second issue challenges Appellee's performance under the contract.

Appellant's issues boil down to whether a genuine issue of material fact exists as to any element of Appellee's cause of action against her to preclude summary judgment. In his summary judgment motion, Appellee sought only a declaration of his rights under the executory contract and pleaded he would waive his remaining claims if the trial court granted summary judgment in his favor. Accordingly, we must determine whether the trial court erred in granting summary judgment in favor of Appellee on his declaratory judgment action against Appellant.

### *Standard of Review*

We review declaratory judgments under the same standard as other judgments or decrees. TEX.CIV.PRAC.&REM.CODE ANN. § 37.010; *Hawkins v. El Paso First Health Plans, Inc.,* 214 S.W.3d 709, 719 (Tex.App.—Austin 2007, pet. denied). Here, because the trial court rendered the declaratory judgment through summary judgment proceedings, "we review the propriety of the trial court's declarations under the same standards we apply to summary judgment." *See Hawkins,* 214 S.W.3d at 719.

We review a trial court's decision to grant summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Provident Life & Accident Ins. Co.*

---

[1] In her response to Appellee's Motion, Appellant posited the Agreement does not constitute a valid executory contract for the sale of land because it includes a lease agreement to a third party unrelated to Appellee, as purchaser. However, this issue has not been raised as a point of error on appeal, and we therefore assume Appellant abandoned it. *See* TEX.R.APP.P. 38.1.

*v. Knott,* 128 S.W.3d 211, 215-16 (Tex. 2003). After the movant satisfies his burden, the burden shifts to the nonmovant to provide evidence which raises a genuine issue of material fact and thus avoids summary judgment. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). This standard applies in actions for breach of an executory contract for the sale of land. *See Reeder v. Curry*, 294 S.W.3d 851, 855 (Tex.App.—Dallas 2009, pet. denied).

In reviewing the summary judgment evidence, we accept as true the evidence favoring Appellant, the non-movant, "indulging every reasonable inference and resolving all doubts in the [Appellant's] favor." *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995).

### *Summary Judgment Evidence*

Evidence relied upon in summary judgment must be otherwise admissible under the rules of evidence. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). Unfiled discovery products may be used as summary judgment evidence when they are attached to the motion or response. TEX.R.CIV.P. 166a(d).

Appellee provided a number of documents as summary judgment evidence, including documents of which he has personal knowledge regarding their creation and/or content, and other documents he received from Mr. Sanchez and/or Appellant in discovery, based on notations made on the face of the documents. Likewise, Appellant attached documents received from Appellee in response to discovery, based upon notations on the face of the documents indicating as much. Both parties specifically reference the documents they rely upon in Appellee's motion and Appellant's response, respectively, and their contents, and we accordingly find they are competent summary judgment evidence. *See Barraza v. Eureka Co., a Div. of White Consol. Indust., Inc.*, 25 S.W.3d 225, 228-29 (Tex.App.—El Paso 2000, pet. denied)(attaching portions of unfiled discovery and

referencing it in movant's motion is sufficient for summary judgment evidence); *see also* TEX.R.CIV.P. 166a(d). To the extent either party objected in principal to any documents offered as summary judgment by the other side, no such objection was made in the record or ruled upon by the trial court, and has therefore been waived. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979)(formal defects in summary judgment evidence must be made in writing and ruled upon by the trial court).[2]

Appellant claimed throughout her response to Appellee's motion that Appellee failed to produce a number of documents requested in written discovery, the contents of which would allegedly illustrate a fact issue. Appellant sought a continuance of the summary judgment hearing to conduct additional discovery, which the trial court never ruled upon. However, the record does not reflect any effort by Appellant to compel responses to discovery, and no rulings by the trial court to that effect. A motion for discovery sanctions was filed, but not ruled upon. Furthermore, on appeal, Appellant does not complain about the trial court's failure to rule upon the motion for continuance or the motion for sanctions, although her brief does mention Appellee's failure to produce requested documents. To the extent Appellant claims additional time to conduct discovery would yield evidence creating a fact issue, her complaint is waived. *See* TEX.R.APP.P. 33.1 (to preserve error, a party must make a timely request, objection, or motion stating the grounds with sufficient specificity to make the trial court aware of the complaint).

### *Issues Nos. One and Three: Validity and Enforceability of the Agreement*

We must determine first whether Appellee and Mr. Sanchez had a valid, enforceable contract. Specifically, we must examine whether a genuine issue of material fact exists regarding

---

[2] Although substantive defects in summary judgment evidence may be raised for the first time on appeal, no such objection has been raised in this appeal.

the description of the Property in the Agreement, since it listed the address as "Tio Dick" instead of Tio Dink; and whether the signature on the Agreement as the seller belonged to Mr. Sanchez.

### Applicable Law

The construction of a contract is a question of law that we review *de novo. Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 252 (Tex. 2009). A court's primary goal in interpreting a contract is to give effect to the parties' intent as expressed in the writing. *Luckel v. White,* 819 S.W.2d 459, 461–63 (Tex. 1991). That intent is garnered from the language of the contract, which is considered in its entirety in an effort to understand, harmonize, and effectuate all its provisions, so that none will be rendered meaningless. *Anadarko Petroleum Corp. v. Thompson,* 94 S.W.3d 550, 554 (Tex. 2002). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983). Further, the Court should not construe a contractual provision in a manner that is unreasonable or absurd. *See Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex. 1987).

In a real estate sales contract, the property to be conveyed is generally considered to be an essential term of the contract and a description of the land to be conveyed is considered essential to its enforceability. *See, e.g., Loeffler v. Lytle Ind. Sch. Dist.,* 211 S.W.3d 331, 346 (Tex.App.–San Antonio 2006, pet. denied)(holding that a contract to sell real property was unenforceable because it did not contain a sufficient description of land subject to contract); *Joplin v. Nystel,* 212 S.W.2d 869, 872 (Tex.Civ.App.–Amarillo 1948, no writ)(draft sales agreement that provided only a "partial description of the land" was unenforceable). Further, when a contract is in writing, the statute of frauds requires an adequate property description in the contract itself that allows the

10

property to be identified with "reasonable certainty." *See, e.g., Texas Builders v. Keller*, 928 S.W.2d 479, 482 (Tex. 1996); *Kanan v. Plantation Homeowner's Ass'n, Inc.*, 407 S.W.3d 320, 330–31 (Tex.App.—Corpus Christi 2013, no pet.).

A party must establish a meeting of the minds to prove the existence of an enforceable contract. *See Southern v. Goetting,* 353 S.W.3d 295, 299 (Tex.App.—El Paso 2011, pet. denied) (citing *Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex. 2007)); *see also David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex. 2008). Further, the terms of the agreement must be definite, certain, and clear as to all essential terms. *Goetting*, 353 S.W.3d at 299–300. When essential terms are missing from the parties' agreement, the parties have, at most, only entered into an agreement to make a future agreement, with the essential terms left open to future negotiations, which, in turn, cannot constitute a binding contract. *Id.*; *see also, T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex. 1992).

"With respect to typographical errors, 'written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied.'" *Falk & Fish, LLP v. Pinkston's Lawnmower and Equipment, Inc.*, 317 S.W.3d 523, 527-28 (Tex.App.—Dallas 2010, no pet.)(quoting *City of Galveston v. Galveston Mun. Police Ass'n*, 57 S.W.3d 532, 539 (Tex.App.—Houston [14th Dist.] 2001, pet. denied)).

The validity of a signature may be contested by expert or lay testimony. *See, e.g., Edwards v. Federal National Mortgage Association*, 545 S.W.3d 169, 179-180 (Tex.App.—El Paso 2017, pet. denied); *Matter of the Estate of Zerboni*, 556 S.W.3d 482, 487-88 (Tex.App.—El Paso 2018, no pet.). However, where a litigant contesting the validity of a signature fails to offer any testimony

11

regarding the validity of a signature, it is not the trial court nor a reviewing court's job to compare the signature at issue with exemplars offered by the party. *See Edwards*, 545 S.W.3d at 179 (where appellant stated there were "obvious differences" between the signature on a mortgage note and the signature on a will, but offered no witness opinion regarding the signatures, this Court declined to make its own comparison of the two).

*Analysis*

Appellant alleges that because the Agreement states it is for purchase of property at 1223 "Tio Dick" in El Paso, Texas, rather than 1223 Tio Dink, title to 1223 Tio Dink cannot transfer from Mr. Sanchez to Appellee. Appellant goes so far as to state the trial court "transfigur[ed]" the Agreement from one for property on Tio Dick into one for property on Tio Dink. According to Appellant, the discrepancy in the property address on the Agreement creates a fact issue regarding what property the parties actually bargained over. Appellee counters that the discrepancy is merely a spelling error, and the remaining summary judgment evidence clarifies Appellee's and Mr. Sanchez's intent to enter into an agreement regarding the property at 1223 Tio Dink.

We agree with Appellee. Appellant does not dispute Mr. Sanchez owned the property at 1223 Tio Dink, or that he purchased it in 1997 prior to his marriage to Appellant. Instead, Appellant claims the Agreement is evidence of Mr. Sanchez's intent to sell property to Appellee at 1223 "Tio Dick," since "Tio Dick" is the property's street name listed on the Agreement. This argument lacks merit. A simple Google search reveals "1223 Tio Dick" does not exist in El Paso.[3] If we accept Appellant's position, Mr. Sanchez knowingly entered into an agreement to accept money from Appellee for property that he not only did not own, but did not exist. In other words, Mr. Sanchez

---

[3] GOOGLE, https://www.google.com (search "1223 Tio Dick El Paso TX 79907").

intended to defraud Appellee of $52,000. We do not believe it is Appellant's intent to judicially admit to Mr. Sanchez's estate attempting to defraud Appellee, and we accordingly do not accept Appellant's argument that Mr. Sanchez intended to negotiate the sale of property to Appellee that does not exist.

Rather, we find the "Tio Dick" reference to be nothing more than a typographical error, and we construe the Agreement according to the intent of the parties. *See Falk & Fish, LLP*, 317 S.W.3d at 527-28. It is obvious the parties intended the Agreement to cover the property at 1223 Tio Dink, and we do not find the spelling error in the street name creates any ambiguity in that intent.

It is well-established that parol evidence cannot be used to show the intent of parties contracting for the sale of land, and the essential terms of such contract must be included in the contract. *See Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945). However, while "essential elements [of a contract] may never be supplied by parol[,] [t]he details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol[,]" so long as the parol evidence relied upon does "not constitute the framework or skeleton of the agreement." *Id.*

Without deeming it necessary to do so, we consider the parol evidence to the Agreement provided as summary judgment evidence to clarify over which property Mr. Sanchez and Appellee believed they were negotiating. Exhibit 5 to Appellee's motion is the handwritten receipt from Mr. Sanchez regarding Appellee's down payment "on the Tio Dink property that I sold him." Exhibit 10 to Appellee's motion is a check from Appellee to Mr. Sanchez, whose memo line reads, "Final Payment 1223 Tio Dink." These two instances of parol evidence clarify and explain the

13

parties' intent to negotiate the sale and purchase of 1223 Tio Dink, despite the typographical error in the Agreement which reads, "Tio Dick." We do not find Appellant provided any evidence to create an issue of material fact regarding the intent of the parties to execute the sales agreement for the property at 1223 Tio Dink.

Further, Appellant claims the trial court erred in finding the signatures on the documents provided as summary judgment evidence by Appellee were those belonging to Mr. Sanchez. Appellant provided no witness testimony regarding the validity of the signature on the Agreement, and instead asks this Court to note the "differences" between Mr. Sanchez's signature on the Agreement compared to other documents relied upon as summary judgment evidence. As we have done previously, we decline to make any such comparison. *See Edwards*, 545 S.W.3d at 179-180.

Moreover, as he discusses in his brief, Appellee provided as summary judgment evidence affidavits from two individuals who witnessed Mr. Sanchez and Appellee sign the Agreement, and testified the signatures on the Agreement were those of Mr. Sanchez and Appellee. Appellant offered no evidence controverting these affidavits. Accordingly, we find Appellant failed to produce evidence of a material issue of fact regarding the validity of Mr. Sanchez's signature on the Agreement.

For these reasons, Appellant's first and third issues are overruled.

### *Issue No. Two: Appellee's Performance Under the Agreement*

Having found the Agreement was valid and enforceable, we must now determine whether a genuine issue of material fact exists regarding Appellee's performance under the contract. In her second issue, Appellant urges that the trial court erred when it pronounced Appellee made payment in full to Mr. Sanchez for the covered property. In support, he claims the Agreement's language,

14

which requires payments of $500 per month, contradicts the facts asserted by Appellee that he made payments of $600 per month. Appellant also argues that the check copies provided by Appellee as summary judgment evidence are insufficient to prove full payment to Mr. Sanchez because the checks were written from Pipo's Academy of Hair Design, of which Mr. Barragan is the owner. Further, Appellant claims that, of the check stubs provided, some indicate the $600 payment was for "teaching materials" and some do not include a stated purpose. Appellant also complains that the four check stubs he provided as summary judgment evidence, which list "teaching materials" as the purpose for payment, contradict the handwritten accounting of payments received by Mr. Sanchez from Appellee, bearing Mr. Sanchez's signature, attached as Exhibit 9 to Appellee's motion.

Appellee counters by citing to the several summary judgment exhibits attached to his motion providing evidence of monthly payments made to Mr. Sanchez, receipt of which Mr. Sanchez acknowledged. He also cites to his affidavit, wherein he testifies to having paid Mr. Sanchez in full under the terms of the Agreement.

First, we find it noteworthy that Appellant does not dispute Mr. Sanchez received $52,000.00 from Appellee. Rather, she takes issue with three checks containing a notation on the check stub as being for "teaching materials" for Pipo's Academy of Hair Design, rather than payments under the Agreement. Appellant claims the payments were actually business expenses which Appellee is now trying to disguise as mortgage payments to defraud the IRS. Further, she alleges the absence of a stated purpose on the six check copies provided by Appellee as summary judgment evidence of the final six payments made under the Agreement does not prove the payments were made pursuant to the Agreement.

15

The summary judgment standard requires us to construe the evidence in the light most favorable to Appellant. *See Park Place Hosp.*, 909 S.W.2d at 510. However, we must indulge only *reasonable* inferences in favor of the non-movant, not *every* inference proffered by the non-movant. *See id.* Under this standard, we are unable to find a material issue of fact. First, we find it unreasonable to infer that a notation on a check stub provides greater evidence of a payment's purpose than the sworn testimony of the person who signed the check. This is especially true considering the three checks in question were for $600, the same amount as each of the previous and subsequent monthly payments under the Agreement.

However, even if we take Appellant's claims as true and assume those three checks were, in fact, for teaching materials, we find no contradiction between this assumption and the sworn affidavit of Appellee, who testified to paying the contract in full. The two are not mutually exclusive. Appellee could have made three payments to Mr. Sanchez for teaching materials and still paid him pursuant to the Agreement, which does not contradict the other summary judgment evidence Appellee provided as proof of payments made. Appellant has not provided any affidavit testimony controverting Appellee's testimony that he paid the contract in full, nor to Exhibit 9 to Appellee's motion which provides a summary accounting of payments made through May of 2014 under the Agreement. Accordingly, we find no error in the trial court's determination that Appellee performed fully under the Agreement.

Appellant's second issue is overruled.

## CONCLUSION

Having overruled each of Appellant's three issues on appeal, we affirm the judgment of the trial court.

16

April 14, 2021

YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.