ANN CRAWFORD McCLURE, Chief Justice
In this appeal, we review a summary judgment foreclosing a lien on a home that Appellant, James T. Edwards, inherited from his mother. Like some cases of this type, the relatively straightforward contract issues blur because of the inaccuracies in mass produced loan documents and foreclosure paperwork. Nonetheless, we affirm.
FACTUAL BACKGROUND
James T. Edwards inherited a house in Trophy Club, Texas, from his mother, Ruth Edwards. Sometime after her death, Bank of America, N.A., the successor of Countrywide Home Loans Servicing LP, filed suit to foreclose on the property. The suit claimed that a "home equity loan agreement" created under the TEX.CONST. art. XVI, § 50 (a)(6), and secured by a deed of trust on the property, was in arrears. Edwards filed a pro se unverified answer that asserted the signature on the promissory note was not that of Ruth Edwards. He also claimed that any Texas home equity loan must be executed in the offices of a lawyer, lender, or title company to be valid, and this loan was not so executed.
The Federal National Mortgage Association (Fannie Mae) was substituted as plaintiff. It filed an amended petition claiming that Ruth Edwards executed a promissory note (the Note) secured by a deed of trust, omitting any reference to a home equity loan or the Texas Constitution. The amended petition alleged that Ruth passed away in 2009, and that Edwards held title to the property through a general warranty deed dated May 13, 2010. As of the date of the amended petition, fifty-two monthly payments had not been made. Fannie Mae sought a declaration establishing its lien, as well as judicial foreclosure of the lien. The amended petition attached the Note and Deed of Trust that require further discussion.[1]
The Note is dated "March 15, 2007," and contains Ruth's promise to pay $156,500.00 along with interest to the original lender in monthly installments of $963.60, beginning *173 May 1, 2007. The final payment was due April 1, 2037. The Note refers to a property address of "308 Village Trl., Trophy Club, Texas." The Note also refers to a deed of trust, dated the same date as the Note, which secures the loan.
The Deed of Trust has a type written date on the first page of "March 6, 2007," but Ruth actually signed the document on March 15, 2007. The Deed of Trust refers to a note, dated "March 6, 2007," with the principal sum of $158,400.00 and a final payment date of April 1, 2037. The Deed of Trust transfers the rights to property at "308 Village Trl, Trophy Club, Texas" (and provides the legal description of the same). The Deed of Trust further describes the note as a renewal and extension of a previous 2003 note, but expressly disclaims that the note is a home equity loan as defined by Section 50(a)(6) of the Texas Constitution.
Ruth apparently had three living children at the time of her death in 2009. Two of Edwards' siblings filed a general warranty deed conveying their interest in the Trophy Club property to him. The warranty deed states that Edwards would assume the obligations under the promissory note dated "March 15, 2007" and in the principal amount of "$156,500.00." The date and loan amount are handwritten into the deed, with the original typed date of "March 6, 2007" and the original typed loan amount of "$158,400.00" having been struck through.
Fannie Mae filed a traditional motion for summary judgment seeking judicial foreclosure on the property. The motion was supported in part by the affidavit of Amy D. Gauthier a "foreclosure specialist" for Seterus, Inc., which she identifies as the mortgage servicer for Fannie Mae. She attached as business records several documents in Seterus's file, including the Note. She similarly identified the Deed of Trust that was executed "[i]n conjunction with the Note." The affidavit attaches additional records showing that Edwards stopped making payments in 2011, and paperwork documenting the notice of default and acceleration of the Note.
Gauthier's affidavit makes one other assertion important to this appeal:
On or about March 15, 2005, Ruth Edwards executed a Texas Home Equity Note ('Note') in the amount of $156,500.00 originally payable to Countrywide Home Loans, Inc. [Emphasis added].
Edwards filed a response to the summary judgment, pointing out discrepancies in the documents attached to Fannie Mae's own motion. Edwards highlighted the statement in Gauthier's affidavit describing the loan as a "Texas Home Equity Loan executed on March 15, 2007." The Deed of Trust refers to a Note dated March 6, 2007. The Deed of Trust also expressly states that the Loan is not a Texas Home Equity Loan. Given these variances, Edwards claims the Note referred to in the Deed of Trust cannot be the same note attached to the summary judgment motion and made the basis of the lawsuit. Edwards then claimed that Fannie Mae failed to produce a note tied to its Deed of Trust, and the deed is therefore not enforceable. He also claimed that if the Note is indeed a home equity loan, it is not enforceable because it was not signed in the office of a lender, attorney, or title company, as required by the Texas Constitution.
Finally, Edwards' response included his own declaration which states in relevant part, "I am familiar with my deceased mother, Ruth Edwards' signature. The signature purporting to be her signature on the last page of the Note dated March 15, 2007 and attached as Exhibit A-l to Plaintiff's Motion for Summary Judgment is not *174 my mother's signature." The trial court granted the motion and this appeal follows.
STANDARD OF REVIEW
We review a trial court's decision to grant summary judgment de novo. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010). Fannie Mae asserted a traditional summary judgment under TEX.R.CIV.P. 166a(a). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Diversicare General Partner, Inc. v. Rubio , 185 S.W.3d 842, 846 (Tex. 2005) ; Nixon v. Mr. Property Mgmt. Co., Inc. , 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the non-movant is taken as true in deciding whether there is a disputed issue of material fact. Fort Worth Osteopathic Hospital, Inc. v. Reese , 148 S.W.3d 94, 99 (Tex. 2004) ; Tranter v. Duemling , 129 S.W.3d 257, 260 (Tex.App-El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Fort Worth Osteopathic Hospital , 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment. See City of Houston v. Clear Creek Basin Authority , 589 S.W.2d 671, 678 (Tex. 1979).
PROPRIETY OF SUMMARY JUDGMENT
Edwards presents three issues on appeal. He contends Fannie Mae failed to prove its entitlement to summary judgment because: (1) the Note and Deed of Trust are not clearly linked to one another; (2) Edwards denied that the signature on the Note was that of his mother; and (3) Fannie Mae's affiant claimed the Note was a home equity loan, and if so, it was not executed in the office of an attorney, lender, or title company, as required by the Texas Constitution.
Is There A Missing Note?
Edwards first issue argues that Fannie Mae's own evidence, and particularly the discrepancies in that evidence, suggest the existence of another note. If so, then Fannie Mae's summary judgment motion failed to produce the note that is tied to its Deed of Trust such that any lien purportedly created by the deed is unenforceable. The summary judgment record reflects potential discrepancies on two levels. The first is in the transactional documents themselves. The Deed of Trust refers to a note dated March 6, 2007 when the Note sued upon is dated March 15, 2007.[2] The second arises from the affidavit used to support the summary judgment (stating the Note to be a Texas home equity loan), compared to the Deed of Trust (expressly disclaiming the same).
Before addressing the merits, however, we turn to Fannie Mae's claim that the argument is waived. Fannie Mae contends that because Edwards did not object to the summary judgment evidence, any challenge to the authenticity of the Note is forfeited. See Calvillo v. Carrington Mortg. Services , 487 S.W.3d 626, 633 (Tex.App.-El Paso 2015, pet. denied) (holding that debtor who failed to object to note waived any complaint on appeal concerning authenticity or trustworthiness). We agree with that argument as far as it goes, but Edwards is not by virtue of the discrepancies *175 challenging the authenticity of the Note attached to the summary judgment record. Rather, he contends that the discrepancies suggest there is some other note to which the Deed of Trust is tied, and without proof of default of that note, Fannie Mae has not met its summary judgment burden of proof. The question before us, then, is whether the discrepancies create a genuine issue of material fact as to the existence of another note. In response to that argument, Fannie Mae contends these discrepancies are nothing more than typographical errors.
As long as scriveners have plied their trade, there have undoubtedly been typographical errors. While sometimes nothing more a mere annoyance,[3] occasionally those errors have blossomed into legal disputes. In Neese v. Riley , 77 Tex. 348, 14 S.W. 65 (1890), for instance, the court confronted two notes which referred to the same deed. One note stated the land securing the loan contained 90 acres while the other note claimed 93 acres. The court concluded the discrepancy as to the number of acres was "immaterial," because the metes and bounds description left no doubt the "same land is meant." Id. at 66. Typographical errors have also reared their ugly head in the legal description of property-a potentially dangerous occurrence given that a party cannot foreclose a lien when the deed does not describe the land conveyed. Cushing v. Riddel , 255 S.W. 479, 480 (Tex.Civ.App.-El Paso 1923, no writ). Yet a debtor cannot forestall foreclosure based on a "trivial" discrepancy that "deceived no one." Cunningham v. Buel , 287 S.W. 683, 685 (Tex.Civ.App.-San Antonio 1926, no writ) (noting trivial discrepancy in description of land). Similarly, discrepancies between a judgment and abstract of the judgment of a minor nature, including a date off by a few days, do not affect a judgment lien. See Smith v. Adams , 333 S.W.2d 892, 894 (Tex.Civ.App.-Eastland 1960, writ ref'd n.r.e.) (discrepancy of three days); Guar. State Bank of Donna v. Marion Cnty. Nat'l Bank , 293 S.W. 248, 248 (Tex.Civ.App.-San Antonio 1927, no writ) (discrepancy of three days).
The date discrepancy between the Note and Deed of Trust similarly falls into this immaterial category. The documents contain enough other connections that we can say they unquestionably reference each other. The maker and borrower referred to in both documents is the same. The final installment payment date referred to in both documents is also the same. The documents were both executed at the same time. And both documents reference the exact same piece of property. The difference in date is analogous to that addressed in Rosestone Properties, Inc. v. Schliemann , 662 S.W.2d 49, 51-52 (Tex.App.-San Antonio 1983, writ ref'd n.r.e). There, the defendant obtained title to property under a warranty deed. The deed included an assumption clause whereby the defendant agreed to take over the payment of a note. The stated date of the note in the assumption clause was wrong-stating the wrong year of the loan-but otherwise, the amount of the loan, the parties, and the subject property were all the same. The court concluded:
The complaint regarding the erroneous date of the promissory note in the assumption clause unquestionably has reference to the original promissory note. If the instrument containing the reference has enough information to enable *176 one, by pursuing an inquiry based upon the information contained therein, to identify the particular properly to the exclusion of all others, the reference and description are sufficient. See Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380, 383 (1942). The date of the promissory note as listed in the assumption clause was an error that did not affect the validity of the assumption clause.
Id. at 52. Moreover, documents executed by the same parties on the same date which refer to the same real property, and refer to each other, are generally construed together. Mathis v. DCR Mortg. III Sub I, L.L.C. , 389 S.W.3d 494, 507 (Tex.App.-El Paso 2012, no pet.), citing Adams v. First National Bank of Bells/Savoy , 154 S.W.3d 859, 868 (Tex.App.-Dallas 2005, no pet.) and The Cadle Co. v. Butler , 951 S.W.2d 901, 909 (Tex.App.-Corpus Christi 1997, no pet.). Both the Note and Deed of Trust were executed on March 15, 2007, and each identify the same parties, the same real property, and the same final payment date for the loan.[4] We conclude the discrepancy in date does not create a genuine issue of material fact as to the existence of a second note.
The second claimed discrepancy relates to Fannie Mae's affidavit proving up the documents. The affiant refers to the Note as a Texas home equity loan when the Deed of Trust says otherwise. Fannie Mae likewise contends this is also nothing but a typographical error, relying on Hernandez v. Lukefahr , 879 S.W.2d 137, 143 (Tex.App.-Houston [14th Dist.] 1994, no writ). The issue in that case was whether an affiant's reference to the wrong person's name precluded summary judgment because TEX.R.CIV.P. 166a(c) requires that affidavits be free from "inconsistency." Id. The Lukefahr court concluded that the "mere typographical error" was not a true inconsistency because it did not cause confusion. Id. "Rather, the kind of inconsistency prohibited by the rule is an affiant's stating equivocating positions which do not serve to clarify the pertinent issues in the case for which the affidavit is being offered." Id. ; see also 8920 Corp. v. Alief Alamo Bank , 722 S.W.2d 718, 720 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) (holding that a "minor discrepancy" in a summary judgment affidavit, such as the incorrect name of the person making the supporting affidavit, is no cause for reversal).
We contrast the discrepancies in Lukefahr with the inconsistency found in FFP Marketing Company, Inc. v. Long Lane Master Trust IV , 169 S.W.3d 402, 410 (Tex.App.-Fort Worth 2005, no pet.). In that case, the affiant testified that the claimant was the holder and beneficial owner of a set of notes, guarantee, and loan documents. Id. However, the summary judgment evidence upon which the affiant relied showed that the claimant was in fact the holder and legal owner-a difference with legal significance. Id. at 410-11. The court found that the affidavit was internally inconsistent with its supporting evidence and raised a fact issue concerning ownership of notes and guarantees, precluding summary judgment. Id.
Edwards does not argue the conflict between the affidavit and the Note language renders the affidavit "inconsistent" under Rule 166a(c). Rather, he argues it creates a genuine issue of material fact as to whether the Note attached to the motion is the one referenced by the Deed of Trust. We find that position unavailing. The statement in the affidavit was a superfluous descriptor of the Note, which is otherwise *177 clearly identified as a specifically numbered exhibit. The affiant attached the Note as "Exhibit A-1," correctly stating it was dated March 15, 2007, in the amount of $156,500.00, and payable to Countrywide Home Loans, Inc. The affiant then states "in conjunction with the Note" Ruth executed a Deed of Trust, similarly attached as a specified exhibit. The erroneous descriptive term used by the affiant would not in this context lead to any confusion over which Note was in default, and to which note the Deed of Trust referred. We overrule issue one.
Did Appellant Raise a Fact Issue on Forgery?
Edwards claims he raised a genuine issue of material fact that the Note was forged. He did so through his own declaration stating that he was familiar with his mother's signature and the signature on the Note "is not my mother's signature." He also asked the trial court to compare the signature on the Note with Ruth's signature found on an exhibit outside the summary judgment record. A truly forged signature would render the transaction void. See Dyson Descendant Corp. v. Sonat Exploration Co. , 861 S.W.2d 942, 947 (Tex.App.-Houston [1st Dist.] 1993, no writ) ("A forged deed is void ab initio."); Bibby v. Bibby , 114 S.W.2d 284, 287 (Tex.Civ.App.-El Paso 1938, writ dism'd) (same). As an affirmative defense, Edwards had the burden to properly raise and present some evidence of the defense. Am. Petrofina, Inc. v. Allen , 887 S.W.2d 829, 830 (Tex. 1994).
Fannie Mae contends Edwards did not properly raise the issue because it was never asserted in a sworn denial challenging execution of the document. TEX.R.CIV.P. 93(7) (an answer verified by affidavit is required to assert "[d]enial of the execution ... of any instrument in writing, upon which any pleading is founded ..."). Edwards did raise the issue in his pro se answer to the Original Petition, but that answer is not verified as required by Rule 93. Edwards also raised the issue in his response to the motion to summary judgment, which is supported by his own declaration. A properly worded unsworn declaration qualifies as an affidavit or verification. TEX.CIV.PRAC.&REM.CODE ANN. § 132.001(a) (West Supp. 2016)(if it conforms to the proper form, "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law.").
We conclude Edwards' failure to file a verified denial under Rule 93(7) is a defect in his pleadings, but it is one that must have been raised below by Fannie Mae. Several cases dictate this result. In Roark v. Stallworth Oil and Gas, Inc. , 813 S.W.2d 492 (Tex. 1991) the court addressed the scenario of a defendant who filed a summary judgment based on an affirmative defense that they failed to plead. The court concluded that "an unpleaded affirmative defense may also serve as the basis for a summary judgment when it is raised in the summary judgment motion, and the opposing party does not object to the lack of a rule 94 pleading in either its written response or before the rendition of judgment." Id. at 494. Roark reached this conclusion based on the "trial by consent" doctrine, which holds that a party "who allows an issue to be tried by consent and who fails to raise the lack of a pleading before submission of the case cannot later raise the pleading deficiency for the first time on appeal." Id. at 495.
The converse situation, and the one we face here, arose in Via Net v. TIG Ins. Co. , 211 S.W.3d 310, 313 (Tex. 2006). There, the *178 non-movant raised the discovery rule in its response to the movant's summary judgment, asserting a statute of limitations theory. The non-movant's answer never raised the discovery rule. The court held the movant had two choices: it could object that the discovery rule had not been pled, or it could respond on the merits and try the issue by consent. Id. ; see also Roberts v. Wells Fargo Bank, N.A. , 406 S.W.3d 702, 707 (Tex.App.-El Paso 2013, no pet.) (noting the movant's same two choices); Cunningham v. Zurich Am. Ins. Co. , 352 S.W.3d 519, 533 (Tex.App.-Fort Worth 2011, pet. denied) (because party argued in its response to summary judgment motion that agreement did not satisfy Rule 11, it did not waive the argument by failing to plead it); Nicholson v. Mem'l Hosp. Sys., 722 S.W.2d 746, 749 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) ("If the affirmative defense is not specifically pled, but competent summary judgment evidence establishes a genuine issue of material fact with regard to that affirmative defense, summary judgment is improper."). We find no indication that Fannie Mae raised the pleading deficiency below. We therefore turn to the merits.
Fannie Mae contends that Edwards' proof of forgery is based on an "inadmissible conclusory affidavit." Fannie Mae did not object to the declaration in the trial court, and it therefore waived any defects in the form of the declaration. See TEX.R.CIV.P. 166a(f) ; Albright v. Good Samaritan Socy.-Denton Village , 02-16-00090-CV, 2017 WL 1428724, at *2 (Tex.App.-Fort Worth Apr. 20, 2017, no pet.h.). By contrast, a conclusory statement in an affidavit is a substantive defect that can be raised for the first time on appeal. Albright , 2017 WL 1428724, at *2 ; Ordonez v. Solorio , 480 S.W.3d 56, 63-64 (Tex.App.-El Paso 2015, no pet.). As this court has recognized, "form" is defined as the structure of something, while "substance" is a fundamental or characteristic part or quality. Dailey v. Albertson's, Inc. , 83 S.W.3d 222, 226 (Tex.App.-El Paso 2002, no pet.). "For instance, the lack of a formal recitation in an affidavit that the facts set out are within the affiant's personal knowledge is a matter of form, while lack of personal knowledge reflected in the affiant's testimony itself is one of substance. Ordonez , 480 S.W.3d at 64.
A statement is conclusory if it provides a conclusion but no underlying facts in support of the conclusion. See Brown v. Brown , 145 S.W.3d 745, 751 (Tex.App.-Dallas 2004, pet. denied) ; Hou-Tex., Inc. v. Landmark Graphics , 26 S.W.3d 103, 112 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ; Rizkallah v. Conner , 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no writ). Logical conclusions based on stated underlying facts are proper. Rizkallah , 952 S.W.2d at 587 ; Thompson v. Curtis , 127 S.W.3d 446, 450 (Tex.App.-Dallas 2004, no pet.). Edwards' forgery claim is based on two statements: (1) that he is familiar with his mother's signature; and (2) that the signature on the Note attached to the summary judgment is not her signature. He provides no additional explanation for these statements. We conclude that both are conclusory.
First, Edwards provides no factual basis for how he is familiar with his mother's signature. While we do not doubt that many children are well acquainted with a parent's handwriting, they usually have some basis for that knowledge. They have gone through their parents' papers, or they regularly exchanged handwritten notes. TEX.R.EVID. 901(b)(2) permits a non-expert to testify that handwriting is genuine based on familiarity with the handwriting that was not acquired for the current litigation. Early cases focused on the basis for that familiarity. E.g. , *179 Joffre v. Mynatt , 240 S.W. 319, 324 (Tex.Civ.App.-Dallas 1922, no writ) (explaining how witness had seen multiple other notes signed, he had them in his possession, had occasion to look at them several times); Garner v. State , 100 Tex.Crim. 626, 272 S.W. 167, 169 (1925) (possible basis for knowing handwriting might be possession of handwritten letters, bills, or other writings of person). A proponent must establish how the witness obtained the personal knowledge he claims to have. See TEX.R.CIV.P. 166a(f) ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein).
Second, his bare claim that the signature on the Note is not his mother's is also conclusory. It does not explain what unique qualities of his mother's signature were missing or different on the Note. Cases finding lay testimony sufficient include something more than a simple claim the signature is forged. In Wasserberg v. 84 Lumber Co., L.P. , 14-10-00136-CV, 2011 WL 3447493, at *3 (Tex.App.-Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem.op.), for instance, the affiant raised a genuine issue of material fact by stating that the signature affixed to the credit application was not his signature and he never signed the document. This court in In re Est. of Swanson , 130 S.W.3d 144, 148 (Tex.App.-El Paso 2003, no pet.) held that one sister's unequivocal testimony that she knew her sister's signature, and that the signature on the will was not her sister's, raised a fact issue precluding summary judgment. We noted, however, that there was also unrebutted testimony that the notary public who notarized and witnessed the execution of the will had no record entry recording the notarization of the will. Id. Similarly in Grothe v. Grothe , 11-14-00084-CV, 2016 WL 1274059, at *2 (Tex.App.-Eastland Mar. 31, 2016, no pet.) (mem. op.), the court held a son's testimony that he was familiar with his father's signature and the signature on a will was not his father's was some evidence of a forged signature. The son's testimony described changes in the father's signature as his handwriting began to go "downhill." Id. He also based his opinion on several other documents with the father's signature, all of record, by which the jury could have made the same comparison.
Conversely, bare opinions that a signature is a forgery are insufficient. In Cotten v. Cotten , 169 S.W.3d 824, 828 (Tex.App.-Dallas 2005, pet. denied), the trial court properly struck as conclusory a statement in an affidavit that the witness's mother had forged his father's signature. The San Antonio Court of Appeals found that a relative's claim that the signature and initials on a will "look different" than that of the testator did not create a fact issue on a forgery claim. In re Est. of Price , 04-05-00438-CV, 2006 WL 3725542, at *2 (Tex. App.-San Antonio Dec. 20, 2006, pet.denied) (mem. op.); see also Lissiak v. SW Loan OO, L.P. , 499 S.W.3d 481, 494 (Tex.App.-Tyler 2016, no pet.) (affiant's statements that he did not believe the note was valid, that he did not "recollect" signing the note, and that he disputed the validity of the signature was not an unequivocal denial of the signature under Rule 93(7), nor did they raise a genuine issue of material fact). Here, the single statement that the signature on the Note was not Ruth's, without something more, is conclusory and cannot create a genuine issue of material fact of forgery.
Edwards' response below also contends that there are obvious differences between Ruth's signature on the Note and her signature on a copy of her Will. The Will is not attached to the summary judgment *180 motion or response, but to another pleading in the file. No witness, expert or lay, offered any opinion as to those signatures. In effect, Edwards asked the trial court, and now this court, to make the comparison. We decline to do so. Edwards advances no authority that a trial or appellate court can situate itself as a lay witness to compare signatures.[5] Consequently, we overrule Issue Two.
Was It a Home Equity Loan?
To be valid, a home equity loan must comply with numerous requirements set forth in the constitution. See TEX.CONST. art. XVI, § 50 (a)(6)(A)-(Q). One of these requirements states that a home equity loan must be "closed only at the office of the lender, an attorney at law, or a title company." Id. at art. XVI, § 50(a)(6)(N). When the requirements are not met, the lien is invalid, and all principal and interest are forfeited. Id. § 50 (a)(6)(Q)(x); Doody v. Ameriquest Mort. Co. , 49 S.W.3d 342, 345 (Tex. 2001). Edwards argues in his third issue that the Gauthier affidavit raises some evidence the note is a home equity loan, and he claims Fannie Mae failed to present any evidence of compliance with this provision.
We first disagree that the single statement in the Gauthier affidavit is some evidence that the Note is a home equity loan. The Deed of Trust expressly states the loan is not a home equity loan. A witness cannot by parol evidence add to, vary, or contradict the terms of an unambiguous contract. J.D. Edwards World Solutions Co. v. Estes, Inc. , 91 S.W.3d 836, 841 (Tex.App.-Fort Worth 2002, pet. denied). The parol evidence rule is not a rule of evidence, but a rule of substantive law. Hubacek v. Ennis State Bank , 159 Tex. 166, 317 S.W.2d 30, 31 (1958). Even if not an errant typographical error in the Gauthier affidavit, her characterization of the loan could not overcome its express language. Because the Deed of Trust disclaims that the loan is a home equity loan, Article XVI, § 50(a)(6)(N) does not apply. We overrule Issue Three and affirm the judgment of the court below.

Because there is some claim that there may have been more than one note, we use the capitalized term Note and Deed of Trust to refer to the two specific documents that are attached to Fannie Mae's amended petition and its motion for summary judgment.

The Deed of Trust also refers to a note with a principal amount of s of $158,400.00 while the Note was made for $156,500.00. Edwards did not raise this issue below, nor in briefing to this court, and we note it only in passing.

Author Julio Alexi Genao is reputed to have said "I'm absolutely certain the thing that will one day stop my heart for good is the inchoate rage I feel when I read over something I've published and discover a typo." https://www.goodreads.com/quotes/tag/typos (last visited May 11, 2017).

The regular monthly payments that Ruth and James Edwards had made up until 2011 were also in the same amount as that stated on the Note: $963.60.

We acknowledge that in certain election contests, trial courts may on their own compare signatures to verify vote counts. See Reese v. Duncan , 80 S.W.3d 650, 661 (Tex.App.-Dallas 2002, pet. denied). Or, if the case is tried to the court, the trial judge, as would a jury, might have to compare the signature to a known exemplar signature. Morris v. Wells Fargo Bank, N.A. , 334 S.W.3d 838, 848 (Tex.App.-Dallas 2011, no pet.). That is a far cry from enlisting the trial court (or court of appeals in review of a trial court's decision) as a handwriting examiner in a summary judgment proceeding.