# Court of Appeals
## Tenth Appellate District of Texas

---

10-23-00187-CV

---

In the Estate of William Reese Wynn, Sr., Deceased

---

On appeal from the
County Court of Limestone County, Texas
Retired Judge Rory Olsen, presiding
Trial Court Cause No. 9043

---

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Carol Lane Wynn Sorth and William Reese Wynn, Jr., appeal from the trial court's judgment in favor of Susan Stamps Wynn in this probate proceeding. We will reverse and remand.

## I. Background

William Reese Wynn, Sr., married Susan in 1976. At the time, William Sr. had two children, Carol and William Jr., from a previous marriage. William Sr. and Susan had no other children. William Sr. and Susan remained married until William Sr.'s death on June 24, 2021.

Susan thereafter filed an application to probate the will of William Sr. (hereinafter, the decedent) and for issuance of letters testamentary. The decedent's will (hereinafter, the Will) is five pages long, indicates that it was initialed on each page by the decedent, and denotes that it was signed on January 31, 2003, by the decedent and two witnesses. The Will states in pertinent part:

4. EXECUTOR
   A. <u>Executor</u>. I appoint SUSAN WYNN, as Independent Executor of this my Last Will and Testament. . . .

. . . .

7. NATURE OF PROPERTY PASSED UNDER THIS WILL.
   It is my intention hereby to dispose of all my property of whatsoever kind and wherever situated, whether acquired before or after the execution of this Will, whether within or without the State of Texas. I make the following specific gifts:

   A. I confirm to my wife my entire estate and all interest in our community property with the exception of:
      1. The sum of $25,000 to Carol L. Wynn.
      2. The sum of $25,000 to William R. Wynn, Jr.

   B. I give all my clothing, household furniture and furnishings, and other tangible articles of a personal nature, or my interest in any such property not otherwise disposed of by this Will or in any other manner together with any insurance to my wife if she survives me by thirty (30) days, and if she dose [*sic*] not, then I give the property equally to both of my two (2) children, Carol L. Wynn and William R. Wynn, Jr., should they survive me by thirty (30) days.

C. I intentionally disinherit any person not specifically named in the Will.

8. WILL CONTEST PROVISION
If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in my estate or in the estate of any trust established by this Will given to that contesting beneficiary or remainderman under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary or remainderman had predeceased me without issue.

The trial court admitted the Will to probate and appointed Susan as the independent executrix of the Will and decedent's estate.

Carol and William Jr. subsequently filed a will contest. Carol and William Jr. (hereinafter, the Contestants) alleged in their petition that the Will had been forged and/or altered. Specifically, the Contestants alleged that the five pages of the Will are on different types of paper; the initials and signatures on the fourth and fifth pages of the Will appear to have been made using different ink than that used on the first, second, and third pages of the Will; the fourth and fifth pages of the Will appear to have three sets of staple holes while the first, second, and third pages of the Will appear to have only two sets of staple holes; and the decedent's initials on the third page of the Will, the page containing the distribution of decedent's estate, are not in the decedent's handwriting.

"Additionally and/or alternatively," the Contestants asserted in their petition an action for a declaratory judgment to construe the Will. The Contestants alleged that the Will's language — "confirm to my wife my entire estate and all interest in our community property" — is not a residuary clause. The Contestants alleged that, instead, the Will does not contain a residuary clause and, therefore, after the specific devises, the decedent's residuary estate passes by intestacy. The Contestants further asserted in their petition several additional causes of action premised on the Contestants' ownership of the decedent's property as his intestate heirs.

In response to the Contestants' petition, Susan (hereinafter, the Executrix) generally denied the Contestants' allegations. The Executrix also asserted a counterclaim for a declaratory judgment that the Contestants violated the terms of the Will's *in terrorem* clause and that any gift under the Will to the Contestants should therefore be forfeited. The Executrix further pleaded for attorneys' fees under the Declaratory Judgments Act. A retired statutory probate judge was appointed to hear the contested matters.

The Executrix then filed a no-evidence motion for partial summary judgment on the grounds that there was no evidence to support the Contestants' claim that the Will had been forged or altered between its execution and its admission to probate. The Executrix also filed a traditional motion for partial summary judgment on the Contestants' declaratory-

judgment action to construe the Will and on the Contestants' causes of action premised on their ownership of the decedent's property as his intestate heirs. In her traditional motion, the Executrix argued that the decedent unambiguously devised his entire residuary estate to her in the Will. The Executrix contended that the Contestants, therefore, as a matter of law, have no claim to the decedent's estate as intestate heirs and that, accordingly, their claims premised on their ownership of the decedent's property as his intestate heirs have no basis in law or in fact. Finally, the Executrix filed a motion to exclude expert testimony, *i.e.*, the Declaration of Bart Baggett, which had been attached to the Contestants' expert disclosures.

The Contestants filed a combined response to the Executrix's partial summary-judgment motions. The Contestants' summary-judgment evidence consisted of Baggett's declaration, the expert opinion letter of Brett Goldstein, the Contestants' own declarations, and the transcript of the Executrix's deposition. The Contestants also filed a separate response to the Executrix's motion to exclude Baggett's declaration.

A hearing was set on the Executrix's partial summary-judgment motions and her motion to exclude Baggett's declaration. On the day of the hearing, the Executrix filed a reply brief in support of each of her partial summary-judgment motions and included objections to the Contestants' additional summary-judgment evidence.

At the hearing, the trial court signed an "Order Granting [the Executrix's] Amended No-Evidence Motion for Summary Judgment and Granting [the Executrix's] Objections to Contestants' Additional Evidence." In the order, the trial court granted the Executrix's motion to exclude expert testimony, sustained the Executrix's objections to the Contestants' additional summary-judgment evidence and accordingly excluded such evidence, and granted the Executrix's no-evidence motion for partial summary judgment, stating that the Executrix is entitled to judgment as a matter of law on the Contestants' claims of alteration and forgery.[1] The trial court also signed an "Order Granting [the Executrix]'s [Traditional] Motion for Partial Summary Judgment." In the order, the trial court granted the Executrix's motion for partial summary judgment on the Contestants' declaratory-judgment action to construe the Will and on the Contestants' causes of action premised on their ownership of the decedent's property as his intestate heirs, stating that the Executrix is entitled to judgment as a matter of law on the Contestants' request for declaratory judgment that the residuary estate passes by intestacy.

---

[1] It appears that the two experts' names were inadvertently switched in the trial court's order. The Executrix first filed a motion to exclude *Baggett*'s declaration and then later filed a document that contained objections to *Goldstein*'s expert testimony; however, the trial court's order states that the trial court grants the Executrix's motion to exclude *Goldstein*'s expert testimony and sustains the Executrix's objection to *Baggett*'s declaration. Nevertheless, the transposition of the two experts' names appears to be inconsequential because the effect of the trial court's order was that *both* Baggett's declaration and Goldstein's expert testimony were excluded as summary-judgment evidence.

The Executrix then filed a traditional motion for final summary judgment on her counterclaim for a declaratory judgment that the Contestants violated the terms of the Will's *in terrorem* clause and forfeited any devise under the Will. The Executrix further requested that the trial court award her reasonable and necessary trial and appellate attorneys' fees. The Contestants filed a response to the Executrix's motion, and the Executrix then filed an additional reply brief in support of her motion for final summary judgment.

After a hearing, the trial court signed a final judgment, in which it ordered that,

> having failed to plead and timely to secure a finding by this Court that the Contestants' Will contest was brought in good faith and with just cause, the Court's enforcement of the *in terrorem* clause in the Will cannot be avoided and, thus, all devises under the Will to the Contestants, jointly and severally, are declared forfeited.

In the final judgment, the trial court further awarded the Executrix $7,500 in attorneys' fees for representation in the trial court, additional attorneys' fees if the Contestants filed an appeal upon which the Executrix prevailed, and all costs of court.

The Contestants filed a notice of appeal from the trial court's "Order Granting [the Executrix's] Amended No-Evidence Motion for Summary Judgment and Granting [the Executrix's] Objections to Contestants' Additional Evidence." The Contestants then timely filed a notice of appeal

from the trial court's final judgment.[2]  Both notices of appeal were docketed in this one appellate cause number (10-23-00187-CV).

The Contestants thereafter filed an appellants' brief raising six issues regarding whether the trial court erred in its "Order Granting [the Executrix's] Amended No-Evidence Motion for Summary Judgment and Granting [the Executrix's] Objections to Contestants' Additional Evidence" and its "Order Granting [the Executrix]'s [Traditional] Motion for Partial Summary Judgment."  Subsequently, the Contestants filed a motion for leave to supplement their appellate briefing, which we granted.  The Contestants then filed a supplemental appellants' brief raising three additional issues regarding whether the trial court erred in its final judgment.  For clarity, we will refer to the Contestants' three additional issues as "supplemental" issues.

## II.   The Contestants' Claims

In their first four issues, the Contestants argue that the trial court erred in its "Order Granting [the Executrix's] Amended No-Evidence Motion for Summary Judgment and Granting [the Executrix's] Objections to Contestants' Additional Evidence" by ruling to exclude certain of their summary-judgment evidence.  The Contestants then argue in their fifth issue that the trial court erred in the same order by granting the Executrix's no-evidence motion for

---

[2] "When a trial court renders a final judgment, the court's interlocutory orders merge into the judgment and may be challenged by appealing that judgment." *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020).

summary judgment on their claim that the Will had been forged and/or altered. In their sixth issue, the Contestants argue that the trial court erred in its "Order Granting [the Executrix]'s [Traditional] Motion for Partial Summary Judgment" by determining that the Executrix was entitled to judgment as a matter of law on the Contestants' declaratory-judgment action to construe the Will and on the Contestants' causes of action premised on their ownership of the decedent's property as his intestate heirs.

## A.    Exclusion of Contestants' Own Declarations

We begin with the Contestants' fourth issue, in which they argue that the trial court erred in sustaining the Executrix's objections to their own declarations and in, consequently, excluding the declarations as summary-judgment evidence regarding forgery of the Will.

We review a trial court's ruling on the admissibility of evidence in a summary-judgment proceeding for an abuse of discretion. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied).  A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The summary-judgment evidence here included unsworn declarations from the Contestants themselves.  Each of the Contestants' declarations provided that the respective person had gone to the Limestone County

Courthouse and had personally examined the Will. Each declaration then provided:

5. Based on my personal examination of the Will, I observed that page 3 to the Will is a different type of paper than pages 1, 2, 4 and 5 of the Will. The page feels different to the touch and has a different appearance when examined than the other pages of the Will.

6. I am personally familiar with my father's handwriting based on years of handwritten correspondence with him throughout my life and my personally observing his handwriting, including in and around 2003, when the purported will was written, and then in his later years. I have received handwritten letters, notes and cards from my father on innumerable occasions throughout my life. I observed his handwritten notes throughout my life. I routinely visited my father throughout his life, seeing him at least [four times a year for Carol and once if not twice a year for William Jr.] at a minimum. During my visits, I often observed his handwritten notes around his home.

7. Accordingly, based on the above, I am familiar with the manner and style of my father's handwriting, having often seen him write his signature and having seen his signature on documents I know to have been signed by him.

8. The initials at the bottom of page 3 of the Will are not my father's handwritten initials in his handwriting.

9. Based on the above, it is my personal observation that page 3 of the Will was added to pages 1, 2, 4 and 5 at a different time and that my father never initialed page 3 of the Will.

The Executrix objected in the trial court that the Contestants' declarations were wholly conclusory. Specifically, the Executrix argued that each Contestant "baldly state[d]" that "[t]he initials at the bottom of page 3 of

the Will are not my father's handwritten initials in his handwriting" without providing the factual basis upon which that opinion rested. The Executrix complained that "[t]he Contestants [did] not explain what unique qualities of their father's initials were missing or different on the Will."

In this appeal, the Executrix reasserts her contention that the Contestants' opinions in their declarations were conclusory and, therefore, inadmissible as summary-judgment evidence. Specifically, the Executrix argues that, to avoid being conclusory, "the Contestants had to explain why the initials on the third page [of the Will] are different from what [the Contestants] personally observed during their 'years of handwritten correspondence with [their father]' and 'his handwritten notes.'"

The Executrix contends that the El Paso Court of Appeals' decision in *Edwards v. Federal National Mortgage Association*, 545 S.W.3d 169 (Tex. App.—El Paso 2017, pet. denied), is directly on point. In *Edwards*, the Federal National Mortgage Association (Fannie Mae) sought to foreclose on a home that James Edwards had inherited from his mother. *Id.* at 172–73. Fannie Mae filed a traditional motion for summary judgment supported in part by several business records, including a promissory note that Edwards's mother purportedly executed, a deed of trust that was purportedly executed in conjunction with the promissory note, and additional paperwork showing that Edwards was in default. *Id.* at 173. Edwards, who had asserted in his answer

that his mother's signature on the promissory note was a forgery, filed a response to the summary-judgment motion, supported by his own declaration that included the following two statements: (1) he was familiar with his mother's signature; and (2) the signature on the promissory note attached to the summary judgment was not her signature. *Id.* at 172–74, 178. Edwards provided no additional explanation for the statements. *Id.* at 178. The trial court granted Fannie's Mae's motion for summary judgment. *Id.* at 174.

Edwards argued on appeal that the trial court erred in granting summary judgment, in part, because, through his declaration, he had raised a genuine issue of material fact that the promissory note was forged. *Id.* at 177. Fannie Mae responded to Edwards's argument by contending, in part, that Edwards's declaration was conclusory. *Id.* at 178. The El Paso Court of Appeals agreed with Fannie Mae and concluded that the two statements made by Edwards in his declaration were conclusory. *Id.*

First, the *Edwards* court explained its determination by stating that Edwards had provided no factual basis for how he was familiar with his mother's signature. *Id.* The *Edwards* court, citing Texas Rule of Civil Procedure 166a(f), observed that a proponent must establish how the witness obtained the personal knowledge he claims to have. *Id.* at 179 (citing TEX. R. CIV. P. 166a(f)).

Next, the *Edwards* court explained that Edwards's statement that the signature on the promissory note was not his mother's signature was conclusory because it was a "bare claim" that the signature was forged. *Id.* at 179. The *Edwards* court asserted that cases in which lay testimony had been determined to be sufficient had included "something more than a simple claim the signature is forged." *Id.* (citing *Wasserberg v. 84 Lumber Co., L.P.*, No. 14-10-00136-CV, 2011 WL 3447493, at *1, *3–5 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.) (holding that assertions in affidavit (1) that signature affixed to credit application was not authentic and was not affiant's signature and (2) that affiant did not sign credit application or authorize anybody to sign it on his behalf were statements of fact and not conclusory and raised a genuine issue of material fact as to execution of credit application that contained guaranty language that was basis of claim against affiant), and *In re Est. of Swanson*, 130 S.W.3d 144, 148 (Tex. App.—El Paso 2003, no pet.) (holding that decedent's sister presented sufficient evidence casting doubt on will's validity to defeat no-evidence summary-judgment motion where she unequivocally testified that she knew her sister's signature and that signature on will was not her sister's and where there was some unrebutted testimony that notary public who notarized and witnessed will's execution had no record entry recording notarization of will)). The *Edwards* court continued, stating that, "[c]onversely, bare opinions that a signature is a forgery are insufficient."

*Id.* (citing *In re Est. of Price*, No. 04-05-00438-CV, 2006 WL 3725542, at \*2 (Tex. App.—San Antonio Dec. 20, 2006, pet. denied) (mem. op.) (holding that, without establishing familiarity with her aunt's signature, niece's assertion in her deposition that the "initials and the signature [of her aunt] look different" was conclusory and therefore not enough evidence to raise fact issue regarding validity of signature), and *Cotten v. Cotten*, 169 S.W.3d 824, 828–29 (Tex. App.—Dallas 2005, pet. denied) (holding that trial court did not abuse its discretion in granting motion to strike party's affidavit because statements that his mother had forged his father's signature on deed and that unidentified "expert" had confirmed forgery were conclusory and therefore not proper summary-judgment evidence)). The *Edwards* court then observed that Edwards's declaration did not explain what unique qualities of his mother's signature were missing or different on the promissory note. *Id.* The *Edwards* court thus determined that the single statement that the signature on the promissory note was not his mother's, without something more, was conclusory. *Id.*

The Executrix contends here that "[t]he Contestants' handwriting opinions are virtually indistinguishable from the one that the [*Edwards* court] held was conclusory." The Contestants, on the other hand, argue that, unlike the declaration in *Edwards*, their own declarations were not conclusory because the Contestants provided foundation in their declarations as to how

they are familiar with the decedent's handwriting and presented more than a bare claim that the initials on the third page of the Will are forged. We agree with the Contestants.

Texas Rule of Civil Procedure 166a(f) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). Pursuant to Texas Rule of Evidence 701, lay witness opinion testimony is admissible if it is "(a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701. Furthermore, Texas Rule of Evidence 901(b)(2) specifically permits a lay witness to provide an "opinion that handwriting is genuine, based on a familiarity with it that was not acquired for the current litigation." *Id.* R. 901(b)(2).

Here, to support their lay opinions that the initials at the bottom of the third page of the Will were not in the decedent's handwriting, the Contestants provided in their declarations a detailed factual explanation of how they had personally witnessed the decedent's handwriting throughout their lives, including observing his handwriting both around the time that the Will was purportedly signed and during his later years. The Contestants stated in their declarations that they not only saw the decedent's signature on documents that

were known to have been signed by him but also observed the decedent write his signature on documents. The Contestants then explained in their declarations that the foregoing was how they became "familiar with the manner and style" of the decedent's handwriting. And because they are familiar with the manner and style of the decedent's handwriting, the Contestants observed that the initials at the bottom of the third page of the Will are not the decedent's handwritten initials in his handwriting.

A statement is only conclusory if it does not provide the underlying facts to support the conclusion. *Wolfe v. Devon Energy Prod. Co., LP*, 382 S.W.3d 434, 452 (Tex. App.—Waco 2012, pet. denied). Here, even though the Contestants did not provide in their declarations a technical explanation of how the initials at the bottom of the third page of the Will differ from the decedent's handwriting, the Contestants did provide the underlying facts to support their lay opinions that the initials at the bottom of the third page of the Will are not the decedent's handwritten initials in his handwriting. *See* TEX. R. EVID. 901(b)(2). The Contestants' declarations are therefore distinguishable from the declaration in *Edwards* and are not conclusory. *See Wolfe*, 382 S.W.3d at 452. We thus conclude that the trial court abused its discretion in sustaining the Executrix's objections to the Contestants' own declarations and in, consequently, excluding the declarations as summary-

judgment evidence. *See Paciwest, Inc.*, 266 S.W.3d at 567. The Contestants' fourth issue is sustained.

**B.  Summary Judgment on Contestants' Forgery/Alteration Claims**

We now turn to the Contestants' fifth issue, in which they argue that the trial court erred in granting the Executrix's no-evidence motion for summary judgment on their claim that the Will had been forged and/or altered.

A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). Once a no-evidence summary-judgment motion is filed, the nonmoving party must produce summary-judgment evidence raising a genuine issue of material fact as to the elements specified in the motion to defeat the summary judgment. *Mack Trucks, Inc.*, 206 S.W.3d at 582; *see* TEX. R. CIV. P. 166a(i). "A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). Evidence that is "so weak as to do no more than create a mere surmise or suspicion" of a

vital fact does not create a fact issue. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). In determining whether the nonmoving party has met its burden, we review the evidence in the light most favorable to the nonmoving party, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Mack Trucks, Inc.*, 206 S.W.3d at 582; *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

In a proceeding to admit a will to probate, the will proponent bears the initial burden of proof of showing that the will was properly executed and that the testator had testamentary capacity at the time of execution. *Jones v. Jones*, 649 S.W.3d 577, 583 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *In re Est. of Danford*, 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The will proponent may make out a prima facie case on these issues by introducing a self-proved will into evidence. *Est. of Danford*, 550 S.W.3d at 281; *In re Est. of Coleman*, 360 S.W.3d 606, 611 (Tex. App.—El Paso 2011, no pet.). *See generally* TEX. EST. CODE ANN. §§ 251.101 (defining self-proved will); 251.204 (providing requirements for self-proving affidavit). After a will is admitted to probate, as here, a will contestant has the burden of establishing that the will is invalid. *See Williams v. Hollingsworth*, 568 S.W.2d 130, 132 (Tex. 1978); *Est. of Coleman*, 360 S.W.3d at 611. A will may be cancelled for

forgery or other fraud. *See* TEX. EST. CODE ANN. § 256.204(a); *see also id.* § 251.051.

In the present case, the Executrix moved for partial summary judgment on the ground that there was no evidence that the Will was forged or altered in any way between its execution and its admission to probate. Therefore, to preclude summary judgment, the Contestants were required to present evidence raising a genuine issue of material fact regarding whether the Will was forged or altered between its execution and its admission to probate. *See* TEX. R. CIV. P. 166a(i); *Est. of Coleman*, 360 S.W.3d at 611; *In re Est. of Flores*, 76 S.W.3d 624, 629–30 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.). The Contestants argue that they presented sufficient evidence to raise such a genuine issue of material fact. We agree.

"Forge" means:

to alter, make, complete, execute, or authenticate any writing so that it purports:

(i)  to be the act of another who did not authorize that act;

(ii)  to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

(iii) to be a copy of an original when no such original existed[.]

TEX. PENAL CODE ANN. § 32.21(a)(1)(A); *see Est. of Flores*, 76 S.W.3d at 630. Proper lay testimony can raise a fact issue on forgery. *See* TEX. R. EVID. 701,

901(b)(2); *Est. of Price*, 2006 WL 3725542, at \*2; *Est. of Swanson*, 130 S.W.3d at 148.

Here, as explained more fully above, the Contestants provided in their own declarations that they are familiar with the manner and style of the decedent's handwriting and that they observed that the initials at the bottom of the third page of the Will are not the decedent's handwritten initials in his handwriting. The Contestants also stated in their declarations that, based on their personal examination of the Will, they observed that the third page of the Will is a different type of paper than the other pages of the Will. We conclude that the Contestants therefore presented evidence raising a genuine issue of material fact regarding whether the Will was forged. *See* TEX. PENAL CODE ANN. § 32.21(a)(1)(A); TEX. R. EVID. 701, 901(b)(2); *Est. of Swanson*, 130 S.W.3d at 148. We accordingly conclude that the trial court erred in granting the Executrix's no-evidence motion for partial summary judgment. *See* TEX. R. CIV. P. 166a(i); *Est. of Coleman*, 360 S.W.3d at 611; *Est. of Flores*, 76 S.W.3d at 629–30. The Contestants' fifth issue is sustained.

## C. Remaining Summary-Judgment Evidence Issues

Having sustained the Contestants' fourth and fifth issues, we need not reach the Contestants' first, second, and third issues regarding the exclusion of other summary-judgment evidence. *See* TEX. R. APP. P. 47.1.

**D. Summary Judgment on Contestants' Declaratory-Judgment Action & Other Claims**

Having sustained the Contestants' fourth and fifth issues, and having concluded that the Contestants presented evidence raising a genuine issue of material fact regarding whether the Will that was admitted to probate was forged, we further conclude that the trial court's granting of the Executrix's traditional motion for summary judgment on the Contestants' declaratory-judgment action to construe the Will and on the Contestants' causes of action premised on their ownership of the decedent's property as his intestate heirs was premature. *See* TEX. EST. CODE ANN. § 256.204(a) (signifying that a will may be cancelled for forgery or other fraud). The Contestants' sixth issue is therefore sustained.

## III. The Executrix's Counterclaim

In their three supplemental issues, the Contestants argue that the trial court erred in its final judgment. We address each supplemental issue in turn.

### A. Summary-Judgment Grounds

In their first supplemental issue, the Contestants argue that the trial court erred by awarding final judgment against them on grounds and for reasons different than those sought by the Executrix in her traditional motion for summary judgment on her counterclaim. However, because below we

sustain the Contestants' second and third supplemental issues, we need not reach this issue. *See* TEX. R. APP. P. 47.1.

## B. Summary Judgment on Executrix's Counterclaim

In their second supplemental issue, the Contestants argue that the trial court erred by granting the Executrix's traditional motion for summary judgment on her counterclaim for a declaratory judgment that the Contestants violated the terms of the Will's *in terrorem* clause and forfeited any devise under the Will because they presented summary-judgment evidence of their good faith and just cause for prosecuting and maintaining their will contest.

The standard of review in traditional summary judgment cases is well settled. The issue on appeal is whether the movant met its summary-judgment burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). When reviewing a traditional summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

An *in terrorem* clause in a will typically makes the gifts in the instrument conditional on the beneficiary not challenging or disputing the validity of the instrument. *Di Portanova v. Monroe*, 402 S.W.3d 711, 715 (Tex. App.—Houston [1st Dist.] 2012, no pet.). *In terrorem* clauses are designed to dissuade

beneficiaries from filing vexatious litigation, particularly as among family members, that might thwart the intent of the grantor. *Id.*

Subsection 254.005(a) of the Estates Code provides:

A provision in a will that would cause a forfeiture of or void a devise or provision in favor of a person for bringing any court action, including contesting a will, is enforceable unless in a court action determining whether the forfeiture clause should be enforced, the person who brought the action contrary to the forfeiture clause establishes by a preponderance of the evidence that:

    (1)   just cause existed for bringing the action; and

    (2)   the action was brought and maintained in good faith.

TEX. EST. CODE ANN. § 254.005(a). In general, "the term 'just cause' contains an essential element of reasonable factual grounds that may be fairly applied to the legal action at issue." *In re Guardianship of A.B.*, 630 S.W.3d 489, 496 (Tex. App.—Eastland 2021, pet. denied); *see In re Est. of Kam*, 484 S.W.3d 642, 654–55 (Tex. App.—El Paso 2016, pet. denied) ("'With just cause' means that the actions 'in this proceeding were based on reasonable grounds and there was a fair and honest cause or reason for said actions.'" (quoting *Ray v. McFarland*, 97 S.W.3d 728, 730 (Tex. App.—Fort Worth 2003, no pet.))). "For an action to be brought with just cause, factual grounds in support of the action must exist and be presented, and those grounds must be reasonably applicable to the proffered legal basis relied upon." *Guardianship of A.B.*, 630 S.W.3d at 496.

Here, the Will provided as follows:

8. WILL CONTEST PROVISION
   If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share or interest in my estate or in the estate of any trust established by this Will given to that contesting beneficiary or remainderman under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary or remainderman had predeceased me without issue.

We assume without deciding that the Executrix established as a matter of law that the foregoing provision, if enforceable, "would cause a forfeiture of or void a devise or provision in favor of" the Contestants for bringing their forgery/alteration claims. *See generally* TEX. EST. CODE ANN. § 254.005(a). Even so, however, we concluded above that the Contestants presented evidence raising a genuine issue of material fact regarding whether the Will that was admitted to probate was forged and that the trial court therefore erred in granting the Executrix's no-evidence motion for partial summary judgment. Accordingly, a genuine issue of material fact exists regarding whether the Contestants had "just cause" for bringing their forgery/alteration claims. *See Guardianship of A.B.*, 630 S.W.3d at 496; *Est. of Kam*, 484 S.W.3d at 654–55.

For these reasons, we conclude that the Executrix did not meet her summary-judgment burden of establishing that no genuine issue of material fact existed and that she was entitled to judgment as a matter of law on her counterclaim for a declaratory judgment that the Contestants violated the

terms of the Will's *in terrorem* clause and forfeited any devise under the Will.[3] *See* TEX. EST. CODE ANN. § 254.005(a). We accordingly conclude that the trial court erred by granting the Executrix's traditional motion for summary judgment on her counterclaim for a declaratory judgment. *See* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co.*, 73 S.W.3d at 215. The Contestants' second supplemental issue is sustained.

### C.    Attorneys' Fees

In their third supplemental issue, the Contestants argue that the trial court erred in awarding the Executrix attorneys' fees. The Executrix's claim for attorneys' fees was made, in part, in conjunction with her counterclaim under the Declaratory Judgments Act. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. We just sustained the Contestants' second supplemental issue and held that the trial court erred by granting the Executrix's traditional motion for summary judgment on her counterclaim for a declaratory judgment. Accordingly, it follows that the trial court erred in its award of attorneys' fees to the Executrix. *See, e.g.*, *Healthcare Cable Sys., Inc. v. Good Shepherd Hosp., Inc.*, 180 S.W.3d 787, 793 (Tex. App.—Tyler 2005, no pet.). The Contestants' third supplemental issue is sustained.

---

[3] The Executrix did not attempt to argue in her summary-judgment motion that she had established as a matter of law that the Contestants' action had not been brought and maintained in good faith. *See* TEX. EST. CODE ANN. § 254.005(a)(2).

## IV. Conclusion

In light of the foregoing, the judgment of the trial court is reversed, and this proceeding is remanded to the trial court for further proceedings consistent with this opinion.

_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  December 18, 2025

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Reversed and remanded
CV06

